METROPOLIS THEATRE CO. *v.* CHICAGO. 61

# METROPOLIS THEATRE COMPANY *v.* CITY OF CHICAGO.

## ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 181.   Argued March 12, 1913.—Decided April 7, 1913.

A classification of theatres for license fees based on, and graded according to, prices of admission is not arbitrary and unreasonable, even though some of the theatres charging the higher admission may have less revenue than those charging a smaller price of admission and hence paying lower license fees; and so *held* that the Chicago theatre license ordinance is not unconstitutional as a denial of equal protection of the law.

There is a natural relation between price of admission and revenue that justifies a classification based on the former.

This court will consider that a distinction between classes engaged in the same business that obtains in all large cities must be a substantial basis for governmental action in classifying those engaged in such business for taxation.

The fact that a law may be faulty does not demonstrate its invalidity under the Federal Constitution; even though it may seem unjust and oppressive it may be free from judicial interference.

Mere errors of government are not subject to judicial review by this court; and only a palpably arbitrary exercise of authority can be declared void under the Fourteenth Amendment.

246 Illinois, 20, affirmed.

BILL in equity brought in the Circuit Court of Cook County, State of Illinois, to restrain the enforcement of a certain ordinance of the city of Chicago, requiring licenses for places of amusement. The ordinance divides the places of amusement into twenty-one classes. The entertainments offered by complainants fall within the first class, which is defined as "all entertainments of a theatrical, dramatic, vaudeville, variety or spectacular character." The license fee is graded according to the price of admission, exclusive of box seats, as follows: If $1.00 or more, the fee is $1000; if it exceeds 50 cents

but is less than $1.00, $400; if it exceeds 30 cents but is less than 50 cents, $300; if it exceeds 20 cents but not more than 30 cents, $250; if it does not exceed 20 cents, $200.

The foundation of the bill is that the ordinance, in so far as it charges an annual license fee of $1000 upon theatres charging $1.00 or more for any seat, exclusive of box seats, violates the Fourteenth Amendment of the Constitution of the United States.

The city filed a demurrer to the bill, which was over-ruled, and, the city declining to plead further, a decree was entered enjoining the enforcement of § 104 of the ordinance. The decree was reversed by the Supreme Court of the State and the case remanded with directions to sustain the demurrer and dismiss the bill. This writ of error was then sued out.

The bill describes the complainants as persons, firms or corporations, and describes the theatres conducted by each of them as follows: The Colonial theatre, capacity 1482 seats; McVicker's theatre, 1868 seats; Illinois theatre, 1249 seats; Powers' theatre, 1115 seats; Studebaker theatre, 1350 seats; Cort theatre, 962 seats; Grand Opera House, 1379 seats, Great Northern theatre, 1205 seats; LaSalle theatre, 770 seats; Princess theatre, 950; Chicago Opera House, 1434 seats; Olympic theatre, 1532 seats; Garrick theatre, 1259 seats; Whitney Opera House, 708 seats.

The following are the other pertinent facts: The theatres cannot, under the ordinance, accommodate or grant admission to any number of persons in excess of the number of the seats.

There have been given and produced at the theatres respectively, excepting in the Cort theatre, for more than two years last past, and in the Cort theatre for more than two months last past, entertainments and performances of the various kinds described in the ordinance,

and in some of the theatres the price of admission has not
exceeded $1.00 and in others it has not exceeded $2.00.
In some the minimum price of admission has been 50
cents and in some 25 cents. All the theatres, with the
exception of one or two, have at different times during
the last two years made, and intend in the future to make
different maximum and minimum prices of admission, de-
pendent upon the location of seats and according to the
cost of production, the season of the year and condition
of business. It is impossible to tell in advance the con-
dition of business or the character of entertainment or
the highest or lowest prices of admission. At the present
time the highest price to some parts of each of the theatres
is $1.00 or over and the lowest price is much less. There
is not now and never has been any fixed rule or standard
among theatres in Chicago as to the number of seats in
any theatre for which an admission fee of $1.00 or over
is made. In some of the theatres owned and operated by
complainants, and in some theatres owned and operated
by others, there are more seats sold for more than $1.00
for a performance, than in others operated by complain-
ants. The gross revenue per performance of complainants'
theatres and other theatres, if all of the seats were occupied
would differ and vary according to the seating capacity
of the theatres, respectively, and also according to the
conditions prevailing, including in the conditions the
charge made for admission, and the different prices of
admission to different parts of the theatres, there being
no theatres in Chicago wherein the prices of admission
to all parts of the theatre are identical with the prices
of admission charged for the same number of seats in any
other theatre.

The seating capacity of the largest theatre of complain-
ants is 1868, and of the smallest, 708, the gross revenue
of the latter being, when fully occupied, less than $1000,
and of the former not more than $1500, figured on the

basis of existing prices of admission to all parts of the theatre. The largest theatre or place of amusement in Chicago (the performance being of the kind described in the ordinance and similar to those given by complainants) has a seating capacity in excess of 4000, its highest price of admission is $1.00, and during many weeks of each licensed period its gross revenue is in excess of $4000, to-wit: $5000. And there are other theatres to which the highest price of admission is less than $1.00, performances in which are given twice a day, thereby increasing their seating capacity; and the gross and net revenue thereof is more than twice that of some of complainants' theatres. In many other theatres, including those of complainants, charging more than $1.00 for admission, eight performances only are given per week.

The complainants pay taxes upon their buildings and personal property, and they have expended in excess of $10,000 for the purpose of producing and giving entertainments of the kind described and in excess of $5000 in advertising. The good will and business of complainants are of great value, and if the theatres are not permitted to continue as places of amusements a large part of the investment of complainants will be destroyed and they will suffer great and irreparable damage, and in an amount which cannot be adequately ascertained or compensated in an action at law.

The business of complainants is lawful and their theatres have been approved by the authorities of the city and have conformed in every particular to the ordinance of the city.

On December 17, 1909, an ordinance was passed which the officers of the city threatened to enforce against complainants, whereupon a suit was brought by the latter and others to enjoin the same upon the grounds, among others, that its provisions were discriminatory. The ordinance in controversy was then passed.

There are theatres in Chicago other than those of com-

plainants with various seating capacities which, under the ordinance of December 17, 1909, were obliged to pay a license fee of $1000, but which under the ordinance in controversy are required to pay only $400.

The income obtained by theatres of the second, third and fourth classes of the amended ordinance is often largely in excess of the income obtained by those of the first class, and there are and for a long time have been given entertainments at which large assemblages of persons congregate and to which no admission fee is charged.

Complainants intend to give entertainments at their theatres and have refused to pay the license required by the ordinance, and, as such theatres are not impressed with a public use, the city has no right to designate the amount to be charged as admission thereto.

Many causes of action are threatened against complainants and many of their managers and officers.

Theatres and places of amusement in Chicago have paid a license fee starting at $100, in 1881, and progressively increasing during certain periods to January 1, 1910, when it was fixed at $500, and complainants paid the license fee exacted during the several periods.

The inspection and regulation of complainants' theatres do not cost the city more than $50 per year.

The other provisions of the bill set forth in other ways what is alleged to be the discriminatory character of the ordinance arising from basing the license fee upon the price of admission and an infringement of the constitution of the State of Illinois and of the United States is charged.

*Mr. Alfred S. Austrian,* with whom *Mr. Levy Mayer* was on the brief, for plaintiffs in error:

While classification is permissible in an ordinance imposing a license fee either for the purposes of regulation or revenue, the distinctions created by such an ordinance must bear some reasonable and just relation to the subject-

matter of the classification, and to the proposed purposes of the ordinance; and if an arbitrary and improper classification is made, the ordinance cannot be sustained, as a person discriminated against by such an ordinance is deprived of the equal protection of the law, and suffers the deprivation of his property without due process of law. *Cotting* v. *Kansas City Stock Yards Co.*, 183 U. S. 79; *Southern Railway Co.* v. *Greene*, 216 U. S. 400; *Gulf &c. Ry. Co.* v. *Ellis*, 165 U. S. 150; *Raymond* v. *Chicago Traction Co.*, 207 U. S. 20; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540; *Farrington* v. *Mensching*, 187 N. Y. 8; *State* v. *Mitchell*, 97 Maine, 66; *State* v. *Ashbrook*, 154 Missouri, 375; *Chicago* v. *Netcher*, 183 Illinois, 104; *Bailey* v. *People*, 190 Illinois, 28; *Los Angeles* v. *Lankershim*, 160 California, 800; *Owen County* v. *Cox*, 132 Kentucky, 738; 117 S. W. Rep. 296; *City* v. *Wehrung*, 46 Illinois, 392; *Wiggins Ferry Co.* v. *East St. Louis*, 102 Illinois, 560; *Bessette* v. *People*, 193 Illinois, 334; *Hibbard* v. *Chicago*, 173 Illinois, 91; *Monmouth* v. *Popel*, 183 Illinois, 634; *Zanone* v. *Mound City*, 103 Illinois, 552; *State* v. *Sheriff*, 48 Minnesota, 236; *Lappin* v. *Dist. of Col.*, 22 App. D. C. 68; *State* v. *Shedroi*, 75 Vermont, 277; *Nichols* v. *Walters*, 37 Minnesota, 264.

*Mr. Charles M. Haft*, with whom *Mr. William H. Sexton* was on the brief, for defendants in error:

The ordinance in question creates a reasonable classification and does not violate the Federal Constitution by depriving the complainants of the equal protection of the law or causing them to suffer the deprivation of their property without due process of law. *Douglas* v. *People*, 225 Illinois, 536, 544; *Bessette* v. *People*, 193 Illinois, 334; *Heath* v. *Worst*, 207 U. S. 338, 354; *Hawthorn* v. *People*, 109 Illinois, 311; *Tappon* v. *Merchants*, 19 Wall. 490; *State* v. *R. R. Tax Cases*, 92 U. S. 601; *State* v. *Central*, 48 N. J. L. 106; *Head Money Cases*, 112 U. S. 580; *Pacific*

*Exp. Co.* v. *Seibert,* 142 U. S. 339; *People* v. *Iron &c.,*
12 Colorado, 369; *Wehrung* v. *City,* 46 Illinois, 392; *Travelers Ins. Co.* v. *Connecticut,* 185 U. S. 364–371; *Kochersperger* v. *Drake,* 167 Illinois, 122; *Banta* v. *City,* 172
Illinois, 219; *Marmet* v. *The State,* 45 Oh. St. 63; *In re
Abel,* 10 Idaho, 288; *State* v. *Montgomery,* 92 Maine, 433;
*Ex parte Heylman,* 92 California, 482; *Mechanicsburg*
v. *Koons,* 18 Pa. Sup. Ct. 131; *Nashville* v. *City,* 118
Alabama, 362; *Gamble* v. *City,* 147 Alabama, 682; *Ex parte
Lemon,* 143 California, 558; *State* v. *McKinney,* 29 Montana, 375; *Commonwealth* v. *Clark,* 195 Pa. St. 634; *Sworn*
v. *Selser,* 106 Louisiana, 691; *Cowart* v. *City,* 67 S. Car. 35;
*Morgan* v. *Commonwealth,* 98 Virginia, 812; *City* v. *Newhall,* 115 Iowa, 55; *Newton* v. *Atchison,* 31 Kansas, 131; *Ex
parte Sisto Li Protti,* 68 California, 636; *Voss* v. *Memphis,* 9
Lea, 294; *Howland* v. *Chicago,* 108 Illinois, 500; *Smith* v.
*Louisville,* 6 S. W. Rep. 911; *St. Paul* v. *Dow,* 37 Minnesota,
20; *St. Louis* v. *Bircher,* 7 Mo. App. 169; *Gibson* v. *Corapolis,* 22 Pitts. L. J. (N. S.) 64; *State* v. *Schlier,* 3 Heisk.
281; *S. C.,* 8 Heisk. 455; *State* v. *Schoenhausen,* 37 La. Ann.
42; *Amader* v. *Kennedy,* 70 California, 458; *Tulloss* v.
*Sedan,* 31 Kansas, 165; *State* v. *Traders &c.,* 42 La. Ann.
329; *New Orleans* v. *Ponchartrain,* 41 La. Ann. 519; *State*
v. *Liverpool,* 40 La. Ann. 510; *Ficklin* v. *Shelby,* 145
U. S. 1; *Ex parte Mount,* 66 California, 448; *Walker* v.
*Springfield,* 94 Illinois, 364; *State* v. *Hoboken,* 41 N. J. L.
71; *Fretwell* v. *Troy,* 18 Kansas, 271; *St. Joseph* v. *Ernst,*
95 Missouri, 360; *St. Louis* v. *Green,* 70 Mo. App. 468;
*Kiliski* v. *Grady,* 25 La. Ann. 576; *State* v. *Rolle,* 30 La.
Ann. 991; *Sacramento* v. *Crocker,* 16 California, 119;
*Smith* v. *Louisville,* 6 S. W. Rep. 911; *New Orleans* v.
*DuBarry,* 30 La. Ann. 481; *Webber* v. *Chicago,* 50 Illinois,
110; *S. C.,* 48 Illinois, 313; *Littlefield* v. *State,* 42 Nebraska,
223; *McGrath* v. *Newton,* 29 Kansas, 364; *Commonwealth*
v. *Rearick,* 203 U. S. 507; *Rosenbloom* v. *State,* 64 Nebraska,
342; *Homes* v. *Ft. Smith,* 93 Fed. Rep. 857; *City* v. *Clark,*

124 Georgia, 254; *City* v. *Bolton,* 128 Iowa, 108; *Iowa* v. *Gilbertson,* 129 Louisiana, 508; *State* v. *Hammond,* 110 Louisiana, 180; *People* v. *Hotchkiss,* 118 Michigan, 59; *In re Lipschitz,* 14 N. Dak. 622; *Commonwealth* v. *Muir,* 180 Pa. St. 47; *Commonwealth* v. *Clark,* 57 L. R. A. 348; *State* v. *Doherty,* 2 Idaho, 1105; *State* v. *O'Hara,* 36 La. Ann. 94; *Osborn* v. *State,* 33 Florida, 362; *State* v. *Traders' Co.,* 41 La. Ann. 329; *In re Watson,* 17 S. Dak. 486; *Hays* v. *Commonwealth,* 107 Kentucky, 655; *Danville* v. *Weaver,* 17 Pa. Co. Ct. 17; *State* v. *Webber,* 214 Missouri, 272; *People* v. *Smith,* 147 Michigan, 391; *City of Chicago* v. *Brownell,* 146 Illinois, 64; *Quong Wing* v. *Kirkendall,* 223 U. S. 59.

There is no provision in the Federal Constitution which forbids unequal taxation by the States. *Davidson* v. *New Orleans,* 96 U. S. 97, 106; *Bells Gap* v. *Pennsylvania,* 134 U. S. 232; *Pac. Exp. Co.* v. *Seibert,* 142 U. S. 339, 351; *Merchants* v. *Pennsylvania Co.,* 167 U. S. 461; *Coulter* v. *Louisville,* 196 U. S. 599; *Savannah R. R. Co.* v. *Savannah,* 198 U. S. 392; *Metropolitan* v. *New York,* 199 U. S. 1; *St. Louis* v. *Davis,* 132 Fed. Rep. 629.

Mr. Justice McKenna delivered the opinion of the court, after making the above statement.

The attack of complainants (we so call plaintiffs in error) is upon the classification of the ordinance. It is contended that the purpose of the ordinance is to raise revenue and that its classification has no relation to such purpose and therefore is arbitrarily discriminatory, and thereby offends the Fourteenth Amendment of the Constitution of the United States. The character ascribed to the ordinance by the Supreme Court of the State is not without uncertainty. But we may assume, as complainants assert, that the court considered the ordinance as a revenue measure only. The court said: "The ordinance may be sustainable under the taxing power alone, without reference to its

reasonableness as a regulatory measure." And, regarding it as a revenue measure, complainants attack it as unreasonable in basing its classification upon the price of admission of a particular theatre and not upon the revenue derived therefrom; and to exhibit the discrimination which is asserted to result, a comparison is made between the seating capacity of complainants' theatres and the number of their performances within given periods and the theatres of others in the same respects and the resulting revenues. But these are accidental circumstances and dependent, as the Supreme Court of the State said, upon the advantages of the particular theatre or choice of its owner, and not determined by the ordinance. It will immediately occur upon the most casual reflection that the distinction the theatre itself makes is not artificial and must have some relation to the success and ultimate profit of its business. In other words, there is natural relation between the price of admission and revenue, some advantage certainly that determines the choice. The distinction obtains in every large city of the country. The reason for it must therefore be substantial, and if it be so universal in the practice of the business it would seem not unreasonable if it be adopted as the basis of governmental action. If the action of government have such a basis it cannot be declared to be so palpably arbitrary as to be repugnant to the Fourteenth Amendment. This is the test of its validity, as we have so many times said. We need not cite the cases. It is enough to say that we have tried, so far as that Amendment is concerned, to declare in words, and the cases illustrate by examples, the wide range which legislation has in classifying its objects. To be able to find fault with a law is not to demonstrate its invalidity. It may seem unjust and oppressive, yet be free from judicial interference. The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and un-

scientific. But even such criticism should not be hastily expressed. What is best is not always discernible; the wisdom of any choice may be disputed or condemned. Mere errors of government are not subject to our judicial review. It is only its palpably arbitrary exercises which can be declared void under the Fourteenth Amendment; and such judgment cannot be pronounced of the ordinance, in controversy. *Quong Wing v. Kirkendall*, 223 U. S. 59.

*Judgment affirmed.*

