**Lester W. BURR et al., Plaintiffs,**

**v.**

**Sidney E. SMITH, individually and in his capacity as Director of the Department of Public Assistance of the State of Washington, Defendant.**

**Civ. No. 8769.**

United States District Court,
W. D. Washington.

Feb. 10, 1971.

John Gant, Legal Services Center, Seattle, Wash., for plaintiffs.

Slade Gorton, Atty. Gen., Walter E. White, Asst. Atty. Gen., Olympia, Wash., for defendant.

Before HAMLEY, Circuit Judge, and LINDBERG and BEEKS, District Judges.

## OPINION

LINDBERG, District Judge.

This is an action for injunctive and declaratory relief and damages brought to correct alleged violations of the Equal Protection Clause of the Fourteenth Amendment. Jurisdiction of this Court is invoked under 42 U.S.C. § 1983 and 28 U.S.C. § 1343. A three judge court has been requested under 28 U.S.C. §§ 2281 and 2284.

The case presents no factual issues. The parties have submitted the case to this Court on an agreed statement of facts contained in the pretrial order. The order also recites most of the relevant statutory and regulatory materials. We have tried to set forth only the most pertinent of that factual and legal information during the course of this opinion.

At the time this action was instituted, individual plaintiffs Lester Burr and Wynn Smith were persons eligible to receive unemployment compensation under the State of Washington's Employment Security Act. RCW 50.01.005 et seq. Except for this eligibility, plaintiffs would have been entitled to receive joint federal-state Aid to Families With Dependent Children (AFDC) benefits designed to assist the families of persons temporarily unemployed (AFDC–E). 42 U.S.C. § 607. Under the AFDC–E statutes and regulations, however, plaintiffs' eligibility to receive unemployment compensation automatically excluded them from participating in the AFDC–E program. This exclusion resulted in economic hardship for plaintiffs' families. The AFDC–E benefits which each family would have been entitled to receive but for the father's eligibility for unem-

ployment compensation would have been considerably greater than either father's unemployment benefits. Plaintiff Burr's family would have been entitled to $56.94 a month more under AFDC–E than Burr was able to receive under unemployment compensation. Plaintiff Smith's family would have realized a difference of $103.10 per month.[1]

Plaintiffs' basic position in this suit is that their automatic exclusion from receiving AFDC–E or equivalent benefits denies them equal protection under the law. They point out that unemployed persons who receive income from other sources such as social security, workman's compensation, veterans benefits, contributions by friends, etc., are not automatically excluded from the AFDC–E program. In those situations, AFDC–E assistance is available to supplement the other income source and bring the family's income to a level equivalent to a full AFDC–E grant. This supplement is not available to plaintiffs' families. Plaintiffs eligibility to receive unemployment compensation automatically and totally excludes them from participation in the AFDC–E program.

Plaintiffs also point out that the unemployment compensation disqualification only works to the disadvantage of families headed by temporarily unemployed fathers, not to families headed by temporarily unemployed mothers. Families headed by mothers eligible for unemployment benefits receive their AFDC benefits under other AFDC programs, usually AFDC–R. 42 U.S.C. §§ 601–606. As a result, they are not affected by the unemployment disqualification rules which affect AFDC–E recipients. These families are eligible to have their unemployment benefits supplemented by an AFDC grant, much the same as recipients of workman's compensation, veteran's benefits, etc.

Plaintiffs have brought this suit on behalf of themselves, their families and all others similarly situated, contending that the state law and administrative regulation that declare them ineligible to receive AFDC–E benefits are illegal.[2] They seek a judgment declaring the statute and regulation unconstitutional, and they seek a permanent injunction preventing defendant Sidney Smith, the Director of the State Department of Public Assistance, from enforcing them.[3]

RCW 74.12.010 is the state statute questioned here. It provides, where relevant, that the Director of the Department of Public Assistance:

shall have discretion to provide that aid to families with dependent children assistance shall be available to any child in need who has been de-

---

1. Subsequent to the institution of this suit, Washington raised the benefits levels of its unemployment compensation program. Chapter 2, Laws of 1970, Second Extraordinary Sess. By the time of oral argument Burr and Smith were receiving more under the Employment Security Act than they would have been entitled to under AFDC–E. The parties have stipulated, however, that even at the new unemployment benefits levels approximately 1000 families are adversely affected each month because their eligibility to receive unemployment compensation disqualifies them from AFDC–E. Accordingly, defendant has agreed not to challenge the present action on the bases of standing or mootness.

2. We have determined that this suit is properly a three judge case and that it can be pursued as a class action. We have previously denied plaintiffs' request for temporary and preliminary injunctions, and we have denied defendant's motion to add the Secretary of the United States Department of Health, Education and Welfare as a necessary party.

3. Since this suit was instituted, the Washington State legislature has reorganized several administrative agencies, including the Department of Public Assistance. The Department of Public Assistance is now called the Division of Public Assistance, under the Department of Social and Health Services. Defendant Smith was made Secretary, or executive head, of the new Department of Social and Health Services. He remains charged with the authority and responsibility of administering the State's public assistance program. Chapter 18, Laws of 1970, Extraordinary Sess.

prived of parental support or care by reason of the unemployment of a parent or stepparent liable under this chapter for the support of such child, to the extent that matching funds are available from the federal government.

WAC 388–24–135(7) is the Department of Public Assistance regulation under attack. That regulation provides:

To be eligible for AFDC–E an applicant shall be a child:

\* \* \* \* \* \*

(7) Whose father is not receiving unemployment compensation. An otherwise eligible child shall be ineligible for AFDC–E with respect to any week for which his father receives unemployment compensation.

Plaintiffs contend that RCW 74.12.010 and WAC 388–24–135(7) result in unreasonable classifications of like situated families on the bases of (1) the family's source of income, and (2) the sex of the parent receiving unemployment compensation. Such classifications, it is urged, are unrelated to the purposes of the public assistance programs and violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

To properly understand the merits of these contentions, it is necessary to understand the effect of the state provisions and their relationship to the federal AFDC program.

The federal government's Aid to Families With Dependent Children program was established by the Social Security Act of 1935. The program is based upon a plan of federal-state cooperation. Each state administers its own AFDC program in accordance with a federally approved plan. 42 U.S.C. §§ 601–604. The federal government, in turn, carries a large share of each program's cost through a complex system of matching grants.

Until 1961 the federal government recognized only three bases of need to qualify a family to receive AFDC assistance: death of a parent; continued absence from home by a parent; mental or physical incapacity of a parent. 42 U.S.C. § 606. Families which were equally needy, but for reasons other than those listed, could not qualify for AFDC benefits. In 1961 Congress modified the AFDC program so that the term "dependent child" was expanded to include a child in need "by reason of the unemployment \* \* \* of his father."[4] As a result of this legislation, federal matching funds were made available to any state that chose to expand its AFDC assistance program to include families of employable fathers temporarily out of work. The State of Washington chose to participate in the new program, designating it AFDC–E.

In 1967 Congress cut back its AFDC–E participation. It continued a program of matching grants to assistance programs for families of temporarily unemployed fathers, but it made such grants available only if the plan of the would-be recipient state provided "for denial of aid to families with dependent children to any child \* \* \* with respect to any week for which such child's father receives unemployment compensation \* \* \*" 42 U.S.C. § 607(b) (2) (C) (ii).

WAC 388–24–135(7), the Department of Public Assistance regulation attacked by plaintiffs in this suit, was promulgated in direct response to the federal provision. Under the regulation's terms, children otherwise eligible for AFDC–E assistance are disqualified from receiving those benefits during any week in which their fathers receive or are eligi-

---

4. The original amendment referred to "unemployment of a parent," rather than "unemployment of a father." Act of May 8, 1961, Pub.L. 87–31, § 1, 75 Stat. 75. The statute was always intended, however, to assist only families of unemployed fathers. See 1967 U.S.Code Congressional and Administrative News, p. 2997. The Act was amended in 1967 to strike the word "parent" and substitute the word "father" in order to clarify the intent of Congress. Id.

ble to receive unemployment compensation.[5]

RCW 74.12.010, the state statute under attack here, indirectly has the same result as the regulation. By limiting the availability of state grants to situations where "matching funds are available from the federal government," the statute effectively negates the AFDC–E program for families with fathers receiving unemployment benefits.

The basic issue in this case is whether the State has a reasonable justification for denying AFDC–E or equivalent assistance to members of plaintiffs' families while providing such assistance to the families of recipients of other sources of income and the families of mothers receiving unemployment compensation.

■■ In the area of social welfare, a classification is not unconstitutional simply because it is imperfect. "It is enough that the State's action be rationally based and free from invidious discrimination." Dandridge v. Williams, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970). We have examined and reviewed the entire record in this case; we are satisfied that RCW 74.12.010 and WAC 388–24–135(7) are rationally based and do not, either directly or indirectly, result in a violation of the Equal Protection Clause of the Fourteenth Amendment.

Washington's AFDC–E program is, by definition, that joint, federal aid assistance program contemplated by the Social Security Act of 1935, as amended. RCW 74.04.015 (1967 Supp.) By the very nature of the joint program, its scope and tenor are set, in the first instance, by the enactments of Congress. See, e. g., RCW 74.04.015 (1967 Supp.); RCW 74.04.055 (1967 Supp.); RCW 74.-08.260 (1959). The source of the

AFDC–E unemployment disqualification rule is the federal statute, 42 U.S.C. § 607(b) (2) (C) (ii). That statute requires, as a condition precedent to a state's participation in a matching grant program for temporarily unemployed fathers, that children of fathers eligible to receive unemployment compensation be excluded from receiving benefits from the joint federal-state program. The State has the option of choosing not to participate in the joint program at all, or accepting the AFDC–E limitation as demanded by the federal statute. Neither the State nor the Director of the Department of Public Assistance can enlarge the AFDC–E program to provide plaintiffs assistance by simply disregarding or annulling WAC 388–24–135(7) or RCW 74.12.010.

Given this statutory scheme, we find WAC 388–24–135(7) constitutional to whatever extent it prevents plaintiffs from receiving matching grant AFDC–E assistance. The purpose of the regulation is to protect the State's eligibility to participate in the federal matching grant program for unemployed fathers. Without the regulation the State's AFDC–E plan would not meet federal requirements. 42 U.S.C. § 607(b); 45 C.F.R. § 233.100. Presumably, without a satisfactory state plan, the entire matching grant AFDC–E program would terminate, aggravating rather than ameliorating the conditions of hardship experienced by the State's unemployed.

RCW 74.12.010 is likewise reasonable and constitutional insofar as it indirectly excludes plaintiffs from AFDC–E participation. By providing that the State will participate in the joint AFDC–E program only to the extent that matching funds are available, the statute simply reaffirms the State's bas-

---

5. A father cannot avoid disqualification simply by failing to register for and receive unemployment compensation. The State Department of Public Assistance Manual for County Offices requires that the unemployed father be currently registered with the State Employment Serv-

ice. § 6.241(6) It further requires that "An employable applicant for or recipient of public assistance shall apply for unemployment compensation unless he furnishes * * * written verification that he is receiving or not eligible to receive unemployment compensation." § 27.12

ic position that the "AFDC–E program" is by nature that joint program contemplated by the Social Security Act. The statute does not prevent the state from initiating a unilaterally funded public assistance program, parallel to AFDC–E, for dependents of temporarily unemployed fathers eligible for unemployment compensation. It only provides that the State's participation in "AFDC–E" shall be no broader than permitted by the nature of the joint program. We find nothing unreasonable with that position.

Our holdings that RCW 74.12.010 and WAC 388–24–135(7) are reasonable insofar as they exclude plaintiffs from receiving matched funds under the formal AFDC–E program do not totally dispose of this suit, however. Plaintiffs argue that even if they cannot require the State to include them in the formal AFDC–E assistance program they remain, for purposes of public assistance, indistinguishable from persons who do receive such benefits; that if the State is going to provide public assistance supplements to recipients of workmen's compensation, veteran's benefits, etc., and also to the families of mothers eligible to receive unemployment compensation, then the Equal Protection Clause requires the State to implement a program parallel and equivalent to AFDC–E to protect persons excluded from AFDC–E because of the federal unemployment compensation restriction. Such a program, presumably, would be unilaterally funded by the State.

The argument that Washington's participation in AFDC–E puts an affirmative duty upon the State to run a unilaterally funded, parallel assistance program rests upon plaintiffs' conclusion that recipients of unemployment compensation benefits cannot reasonably be distinguished from recipients of other types of income. This conclusion is unwarranted.

■ The State's unemployment compensation program is basically a program of employment insurance. Benefits reserves are built up by joint employer-employee contributions during periods of employment. The amount of compensation an employee receives in case of unemployment is correlative with previous contributions. The recipients of unemployment compensation are generally physically and mentally fit and able to be employed in the future. It is within the legislature's discretion to determine that this type of program, benefitting this type of person, shall be the first and exclusive line of defense against temporary unemployment. See RCW 50.01.010.

Many legitimate state interests arguably are served by relying exclusively upon unemployment compensation in the first instance. For example, primary reliance on unemployment reserves frees limited state funds for other uses, including the procurement of matching federal funds for public assistance programs; the receipt of insurance benefits to which they have contributed may be better for the morale of unemployed workers than would be dependence upon or even eligibility to receive welfare assistance; the receipt of unemployment compensation, which is temporary in nature, may act as a greater incentive for the unemployed to seek new employment than the receipt of welfare assistance.

It is not our purpose here to list all the considerations which might justify the legislature's reliance on unemployment compensation. Our only purpose is to indicate that there are reasonable arguments which might form the legitimate legislative base for treating recipients of unemployment compensation differently from recipients of other income sources. See McGowan v. Maryland, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 6 L. Ed.2d 393 (1961).

Intractable economic and social problems are inherent in any effort to implement a just system of public assistance. Resultingly, the perimeters of each systems coverage are typically rough and irregular. In Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153 (1970), the Supreme Court recently defined the standard that courts must use in deter-

mining whether these irregularities amount to a denial of equal protection.

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, [31 S.Ct. 337, 340, 55 L.Ed. 369]. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70, [33 S.Ct. 441, 443, 57 L.Ed. 730]. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' McGowan v. Maryland, 366 U.S. 420, 426, [81 S.Ct. 1101, 1105, 6 L.Ed.2d 393]. Id. at 485, 90 S.Ct. at 1161.

All the parties in this case are in agreement that plaintiffs' exclusion from the State's public assistance program is not the result of any discriminatory purpose. The scope of the state coverage is basically a result of the complex interplay between federal and state programs and an underlying conviction that, as long as federal matching funds are not available to assist the State in carrying out a more comprehensive program, the first line of defense against economic adversity should be unemployment compensation. The "Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients." Dandridge v. Williams, supra at 487, 90 S.Ct. at 1163. We find that the attacked statute and regulation, and the failure of the State to implement a unilateral program of public assistance for plaintiffs' dependents all have a rational basis and that the classifications resulting therefrom are consistent with the Equal Protection Clause of the Fourteenth Amendment.

The Court having concluded that plaintiffs' contentions are without merit, defendant shall submit a final order of dismissal to this Court within ten (10) days after the filing of this Opinion.