**DELAWARE COUNTY WELFARE RIGHTS ORGANIZATION et al.**

v.

**Helene WOHLGEMUTH, Individually and Secretary, Department of Public Welfare.**

**Civ. A. No. 73-2177.**

United States District Court, E. D. Pennsylvania.

Jan. 11, 1974.

---

Richard S. Packel, Delaware County Legal Assistance Association, Inc., Chester, Pa., for plaintiffs.

Glenn Gilman, M. Faith Angell, Asst. Attys. Gen., Michael von Moschzisker, Deputy Atty. Gen., Eastern Regional Director, Israel Packel, Atty. Gen., Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

HIGGINBOTHAM, District Judge.

Considering this case in the light most favorable to the plaintiffs, at most it raises an issue as to whether all change in the Commonwealth of Pennsylvania Department of Public Welfare payment system must be subjected to a due process hearing before implementation. I hold that plaintiffs' complaint must be dismissed for failure to state a cause of action.

Perhaps even too belatedly the Department of Public Welfare initiated a more modern computer check processing system known as a digital payment system. Before October 1, 1973, all recipients received payments on approximately the second and the seventeenth of each month.[1] As a result of the conversion to the digital payment system "On October 1, 1973, all geographically determined Delaware County recipients were mailed a check. This check was in an amount proportionate to their semi-monthly allotment with the initiation of the digital system. Thus, those recipients bearing a last digit number '1' received their full semi-monthly allotment. Those with a last digit '2' received a one-day grant on October 1, 1973, and a full semi-monthly grant on October 2, 1973, and October 17, 1973. Those with a last digit '3' received a two-day grant on October 1, 1973, and a full semi-monthly grant on October 3, 1973, and October 18, 1973. This has continued in progression throughout the month."[2]

Thus, instead of recipients receiving their checks on the second and the seventeenth of each month, some bi-weekly checks are mailed on different days dependent upon the recipient's last digit number. Over any gross period of time the new system does not in any manner decrease the annual or monthly amounts

---

1. Complaint at p. 3.

2. Defendant's Proposed Pretrial Order at p. 3.

or even daily amounts to which any recipient is entitled. However, plaintiffs claim that the change ". . . has deprived plaintiffs' class of due process of law in instituting a new system of welfare payments without providing sufficient notice prior to the implementation of the new system." [3]

In Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), the Supreme Court adjudicated the validity of a Maryland Department of Public Welfare Regulation which placed an absolute maximum of $250.00 per month as a grant under the Aid to Families With Dependent Children program, regardless of the size of the family or their actual need. The recipients challenged the statute, *inter alia,* on equal protection grounds, for it was obvious that a family with several children ended up with significantly less money per child to provide bread on the table or clothing on the body. But the Supreme Court held that the statute was valid and the holding there on equal protection grounds is relevant to the instant case even though here a due process challenge is asserted. The Court said:

> "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393." *Id.* at 485, 90 S.Ct. at 1161.

In conclusion, the Court emphasized:

> ". . . it is a standard that is true to the principle that the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy." *Id.* at 485–486, 90 S.Ct. at 1162.

■■ By reason of the digital payment system, defendant appears to be operating with an increased managerial efficiency which does no harm to plaintiffs. An improvement of managerial efficiency is not a synonym for due process violations, and change even of the welfare system is not *per se* invidious discrimination.

On the Due Process Clause, the Supreme Court has noted:

> ". . . due process of law does not require a hearing 'in every conceivable case of government impairment of private interest.' Cafeteria and Restaurant Workers Union etc. v. McElroy, 367 U.S. 886, 894, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). That case explained that '[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation' and firmly established that 'what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' Id., at 895, 81 S.Ct., at 1748; Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970)." Stanley v. Illinois, 405 U.S. 645, 650, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972).

If a trial judge's opinion should be directly proportionate to the extensiveness of plaintiff's briefs and the scope

---

3. Plaintiffs' Brief, p. 1.

claimed by a plaintiff's complaint, I would be required here to write many pages, perhaps even a minor treatise. But, bluntly, plaintiffs' complaint is totally devoid of even the slightest federal constitutional merit. Thus, from either a perspective of judicial economy or from the ecological standpoint of preservation of our resources, it would be inappropriate to utilize even another ounce of paper beyond noting that the complaint is dismissed with prejudice for not stating a cause of action.