Fuchsberg, J.
(concurring). If I were acting in the capacity of legislator, I would vote against article 18, for I believe that the concept that the individual is the basic and ultimate unit in society must be supported by recognition of the value of one’s physical, mental and emotional integrity, including freedom from pain and suffering and the ability to live an uncrippled life.
The automobile, a modern bane and boon, daily threatens that integrity for millions of people. And article 18, while not in any way alleviating that threat, strips a class which includes most automobile accident victims of the right to be fairly compensated for injuries and pain and suffering, no matter how genuine and how clearly the result of negligence by others. In so doing, I believe it does not operate in the public interest, and I cannot view with equanimity the emasculation of common-law principles whose long-developing emphasis on personal and human rights promised full and fair compensation for all such individuals.
But I do not sit here as a legislator or even in the capacity of citizen alone. As a Judge, my role and my obligation is a different one. It requires me to respect and uphold a reasonable exercise of the legislative power to deal with the public health, safety, morals and welfare of my fellow citizens of this State, regardless of whether that exercise is, in my judgment, wise or unwise. Laws are passed, amended and repealed all the time, and whether they are the best or even desirable means to accomplish their intended purposes is not subject to judicial review. It is not our business to choose from among "the earnest conflict of serious opinion”. (Chicago, Burlington & Quincy R. R. Co. v McGuire, 219 US 549, 569.) However, at least in theory, we are not powerless when the legislation lacks a rational purpose.
Accordingly, while I agree with the accuracy of the schol *69 arly exposition of the principles of constitutional law articulated by the majority in this case, I do not find the rational basis which is required for their application free from serious question.
To demonstrate a rational basis, the majority opinion has focused on four so-called infirmities of the pre-existing tort system as it applied to automobile accident reparations.
It is conceded that the first of these, increased safety, which is very likely the public’s greatest concern, is not sought to be remedied by article 18. Indeed, while there is not much empirical evidence that the prospect of being held at fault and subject to a financial burden, especially in an age of insurance, is a deterrent, data does exist to support the idea that such sanctions do affect human behavior. (Barmack & Payne, The Lackland Accident Countermeasure Experiment, Accident Research 665; California Department of Motor Vehicles, Report of the Relationship Between Concurrent Accidents and Citations [1965]; Andenaes, General Preventive Effects of Punishment, 114 U Pa L Rev 949.)
As to the second infirmity, the allegedly high cost of distributing the premium dollar under the tort system, article 18 does not in any way change the essential commissions, overhead and administration system under which tort liability insurance was written. In actual experience, no-fault results in the delivery of a smaller portion of the premium dollar to the injured person. (Brainard, Impact of No-Fault on the Underwriting" Results of Massachusetts Insurers, 44 Mass LJ 174; A Comparison of the Florida and Massachusetts Experience, Journal of Risk and Insurance, March 1974, pp 31-38; Conard, Live and Let Live: Justice in Injury Reparation, 52 Judicature 105 [1968].)
The third infirmity is that there was allegedly overcompensation for people with lesser injuries and undercompensation for those more seriously injured. In fact, the studies on which the claim of "overpayment” relies make clear that their definition of overpayment means compensation in excess of economic loss; in other words, they criticize all payments for the personal effects of injuries and pain and suffering. As to major victims being underpaid, that results chiefly from inadequate compulsory liability insurance limits and the former harsh doctrine of contributory negligence, problems to which article 18 does not address itself and which continue to affect seriously injured persons, save for special damages, which, for *70 almost all claimants, were provided by collateral sources long before the enactment of article 18. (Ring, The Fault with "No-Fault”, 49 Notre Dame Lawyer 796 [1974]; Report of American Bar Association Special Committee on Automobile Reparations, p 47 [1969].)
The fourth infirmity is the alleged need to unclog court calendars. In fact, tort litigation occupies only a minor portion of overall court time. (Automobile Accident Litigation, A Report of the Federal Judicial Center to the Department of Transportation, April, 1970; Twentieth Annual Report of the NY Judicial Conference, 1975, pp 54-55, 60-61; see, also, Zeisel, Kalven and Buchholz, Delay in the Court, p 29 [1959]; Green, Basic Protection and Court Congestion, 52 ABAJ 926 [1966].) Interestingly, the courts in which were brought the lesser cases which article 18 would remove had been brought up-to-date by effective court administration before its enactment (1973 Report of Supreme Court Justice Edward Thompson, Administrative Judge of the Civil Court of the City of New York, entitled Justice Never Rests). The courts where the more serious cases are brought are not reached by article 18 at all.
Much of what has been noted derives from the fact that article 18 is not in fact a true "no-fault” law. A true no-fault law, based on the conclusion that the automobile is a sufficiently dangerous instrumentality, while it would impose the concept of strict liability for injuries resulting from automobile accidents and thus eliminate the need to determine fault, would provide for full and fair compensation for all damages, including general damages for injuries as well as special damages for monetary losses. Seven other States, in enacting their own forms of hybrid no-fault legislation, have come closer to the ideal of full recovery by providing for compulsory, first-party benefit insurance, as does New York’s article 18, while at the same time permitting nonduplicative recovery by suit against tort-feasors at common law. (Arkansas [Ark Stat Ann., § 66-4108]; Delaware [Del Code Ann., tit 21, § 2118, subd (g)]; Maryland [Md Ann. Code, art 48A, § 542]; Oregon [Ore Rev Stat, §§ 743.830, 743.835]; South Dakota [SD Comp Laws Ann., § 58-23-8]; Texas [14 Vernon’s Tex Insurance Code Ann., § 5.06-3, subds (c), (h)]; Virginia [Va Code, § 38.1-380.1]. In addition, it should be noted that Kentucky’s statute permits optional rejection by the insured of the limitation upon tort liability [Ky Rev Stat, § 304.39-060].)
*71 However, continued adverse dissection of the support for article 18 and the citation of many more of the mountains of literature, statistics and even propaganda which preceded its enactment, would not alter the position I must reach. The legislation is not unconstitutional merely because its support is weak. (Kotch v Pilot Comrs., 330 US 552.) What we are dealing with here is not directly the fundamental right to be secure in one’s person or health but rather the economic and social one to recover civil damages when these have been invaded. Therefore, the Legislature is free to experiment and to innovate and to do so at will, or even "at the whim” (Munn v Illinois, 94 US 113, 134; North Dakota Pharmacy Bd. v Snyder’s Stores, 414 US 156), so long as it has any reasonable basis for its enactment. (McGowan v Maryland, 366 US 420, 426.) "Rough accommodations—illogical it may be, and unscientific” are also permissible. (Metropolis Theatre Co. v Chicago, 228 US 61, 69-70.) And "to find fault with a law is not to demonstrate its invalidity”. (Ibid.) Above all, "every possible presumption is in favor of its validity, and * * * it may not be annulled unless palpably in excess of legislative power”. (Nebbia v New York, 291 US 502, 538.)
The rational basis test is indeed undemanding. Under it, legislation must be upheld as constitutional "if any state of facts reasonably may be conceived to justify it.” (McGowan v Maryland, supra, at p 426, citing Kotch v Pilot Comrs., supra, at p 552.) Were that test one which lent itself to degrees rather than to dichotomies, I believe that the outcome of this litigation would have to be different. However, since West Coast Hotel Co. v Parrish (300 US 379) heralded the demise of Lochner v New York (198 US 45), courts have observed an almost total dichotomy between legislation which affects those rights characterized as "property” or "contract” rights and that which affects those characterized as "personal” rights. The former need meet merely the rational test we use here; the latter are accorded the stringent protection of the compelling interest test. I find such a dichotomy difficult to draw when serious and very basic consequences to individuals are involved, even when those consequences can be labeled economic. (See Tribe, The Supreme Court, 1972 Term—Foreword: Toward a Model of Roles in the Due Process of Life and Law, 87 Harv L Rev 1; San Antonio School Dist. v Rodriguez, 411 US 1, 98 et seq. [Marshall, J., dissenting]; see, also, Gunther, The Supreme Court, 1971 Term—Foreword: In Search of *72 Evolving Doctrine on a Changing Court—A Model for a Newer Equal Protection, 86 Harv L Rev 1.)
Whatever movement there may have been toward more flexibility in this area, it has not reached the economic issues involved here today. I am, therefore, constrained to agree that, under a test which requires the court not only to search the record for reasons but also to ask itself whether it can "conceive” of any, article 18 is constitutional.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler and Cooke concur with Judge Jones; Judge Fuchsberg concurs in a separate opinion.
Judgment reversed, without costs, summary judgment granted to appellants and case remitted to Supreme Court, Kings County, for entry of judgment declaring the rights of the parties in accordance with the opinion herein.