Leonard A. MIHALICH, et al., Plaintiffs,

v.

COMMONWEALTH OF PENNSYLVANIA, et al., Defendants.

Robert M. RODERICK, et al., Plaintiffs,

v.

COMMONWEALTH OF PENNSYLVANIA, et al., Defendants.

Civ. A. Nos. 84–0137, 84–0138.

United States District Court, M.D. Pennsylvania.

May 9, 1985.

Gary D. Melchionni, Susan Friedman, Lancaster, Pa., for plaintiffs.

Stuart Davidson, Jonathan Walters, Philadelphia, Pa., for defendants.

Alaine S. Williams, Nancy B.G. Lassen, Philadelphia, Pa., Susan J. Forney, Deputy Atty. Gen., Allen C. Warshaw, Chief, Litigation Section, Kathleen F. McGrath, Deputy Atty. Gen., Harrisburg, Pa., for AFSCME, Council 13.

## MEMORANDUM

CALDWELL, District Judge.

### I. Introduction

The above-captioned matters have been informally consolidated for the purpose of deciding the summary judgment motions filed by Commonwealth of Pennsylvania and Union defendants[1], as well as the cross motions filed by plaintiffs. Plaintiffs have not opposed Union defendants' motion with respect to dismissing the claims against all defendants except Council 13. Accordingly, all references to AFSCME in this memorandum, unless otherwise specified, are to Council 13. Additionally, plaintiffs do not oppose Commonwealth defendants' motion that summary judgment be granted in their favor with regard to plaintiffs' claims under state law and for monetary damages, because such claims are barred by the eleventh amendment. Thus the sole remaining matters subject to the summary judgment motions are claims against the Commonwealth defendants in the form of declaratory and injunctive relief and claims against AFSCME Council 13.

### II. Background

The civil rights complaints in these two matters were filed by ten investigators in two divisions of the Office of the Attorney General of Pennsylvania.[2] Plaintiffs in *Mi-halich* are employed with the Medicaid Fraud Control Unit (MFCU) and those in *Roderick* work for the Bureau of Narcotics Investigation and Drug Control (BNI). Basically the complaints allege a violation of plaintiffs' rights under the equal protection and due process clauses of the fourteenth amendment of the United States Constitution and under comparable provisions of the Pennsylvania constitution.

The situation giving rise to these claims originated when defendant Zimmerman assumed office on January 20, 1981, as Pennsylvania's first elected Attorney General. Zimmerman had hoped to provide pay increases to all of the investigators in the Office of the Attorney General (OAG), but decided to focus initially on raises within the Bureau of Criminal Investigation (BCI), rather than for the investigators in MFCU and BNI. Moreover, the job specifications for these three groups were rewritten so as to reflect the kinds of duties each was to perform. Also furloughed investigators from one group could no longer "bump" less senior investigators in another group.

Negotiations by personnel from the OAG and AFSCME (the collective bargaining unit for the investigators) began during mid-1981, and an agreement was signed on November 18 of that year. Pursuant to the agreement, BCI investigators were reclassified as Special Agents, received salary increases, and retained the seniority they had earned as criminal investigators. Some of the MFCU and BNI investigators who sought Special Agent status filed classification grievances, which were denied through the first four steps of the collective bargaining agreement's procedure. Thereafter AFSCME proceeded to advisory arbitration.

In the meantime the OAG attempted to give pay increases to MFCU and BNI in-

---

**1.** The Commonwealth defendants named in the complaint are the Office of the Attorney General and Attorney General LeRoy S. Zimmerman, who was sued in his official capacity. The named Union defendants are the American Federation of State, County and Municipal Employ-ees (AFSCME), AFSCME Council 13 and AFSCME District Council 89.

**2.** Defendants removed these actions from the Commonwealth Court of Pennsylvania to the United States District Court for the Middle District of Pennsylvania.

vestigators but had abandoned these efforts in the face of a budget cut. Upon receipt of a supplemental appropriation from the state legislature, however, the matter was revived. The arbitrator, with the concurrence of all parties, had been asked not to render a decision, but when OAG–AFSCME negotiations reached an impasse, the arbitrators' decision was requested. On April 18, 1983, the decision was issued and found for the grievants.

The OAG did not implement the decision resulting from the advisory arbitration but rather resumed negotiations which resulted in an agreement signed on November 10, 1983. The BNI investigators were reclassified as Narcotics Agents and the MFCU investigators were given the title of Medicaid Investigators. All retained the seniority earned under their previous classifications and received the same pay raise accorded to Special Agents. The salary increase, however, was not retroactive.

Plaintiffs in the present matter seek both declaratory and injunctive relief and specifically seek pay and benefit increases, and equivalent reclassification, retroactive to the effective date of the ·changes for Special Agents (formerly BCI investigators).

## III. The Current Motions

█ The current motions, as all motions for summary judgment filed in federal court, are subject to the provisions of Federal Rule of Civil Procedure 56. A court cannot grant such motions unless no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Under the legal requirements governing summary judgment matters, courts cannot resolve factual disputes or credibility issues but rather must concentrate on whether the undisputed facts show that a judgment in favor of one party or the other is appropriate.

█ In the present cases insofar as they relate to the Commonwealth defendants, it is agreed that the proper constitutional test to be applied to defendants' actions is the rational relationship one. This test requires that the government action "classify

the persons it affects in a manner rationally related to legitimate governmental objectives." *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1081, 67 L.Ed.2d 186, 195 (1981). Plaintiffs have conceded that this standard is not a difficult one to meet but yet argue that the classificatory scheme at issue in the present matters cannot survive even this most lenient constitutional analysis.

Plaintiffs have cited the two-pronged procedure utilized by the United States Court of Appeals for the Third Circuit in *Delaware River Basin Commission v. Bucks County Water & Sewer Authority,* 641 F.2d 1087 (3d Cir.1981) in applying the rational relationship test. Plaintiffs agree that the classification system now before us meets the first prong in that the Commonwealth defendants' goals in setting up the scheme were legitimate. The second prong, the means used to achieve the goals, is the subject of defendants' challenge. In the case of *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171, 1976 (1979), the United States Supreme Court stated,

> [C]ourts are quite reluctant to overturn governmental action on the ground that it denies equal protection of the laws. The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted. Thus, we will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.

In a footnote, the Third Circuit Court in *Delaware River Basin* dealt with the proper test in the context of challenged agency action rather than legislative action and observed,

> [I]in applying rationality analysis, courts generally do not subject administrative action to more exacting scrutiny than

**528**

that accorded legislative decisions. [citations omitted] The equivalent treatment of legislative and administrative choice has on occasion been questioned, however. [citations omitted] Generally absent from administrative decisionmaking is the safeguard of correction of unwise policy choices by the democratic process.... In addition, while a legislature must be assumed to understand its own objectives and to allocate burdens and benefits in furtherance of them, this assumption becomes more attenuated when the classification in question is drawn by an administrative agency.

641 F.2d at 1093 n. 11.

Our task in the present circumstances thus appears to be one of determining whether, given the presumption of constitutionality of the Commonwealth's classification scheme, the undisputed facts show that the classification is rationally related to the achievement of Commonwealth defendants' goals. If so, summary judgment must be granted for these defendants.

■■■ Given the lenient constitutional test to be applied, we are persuaded that the Commonwealth defendants are likely to prevail but that disputed facts, particularly with regard to the overlapping job responsibilities of the three groups of investigators, cannot be resolved in the context of a summary judgment motion. In fact, the advisory arbitration decision was for reclassification of the MFCU and BNI investigators to the equivalent level of the BCI investigators. This court, of course, is not bound by the arbitration finding but certainly will not ignore it.

■■■ On the other hand, the United States Supreme Court has made it clear in many decisions, among them the often-cited case of *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) that imperfect classifications do not necessarily affront equal protection principles. As the *Dandridge* Court noted,

In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.*, 220 US 61, 78, 55 LEd 369, 377, 31 SCt 337 [340]. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co. v. City of Chicago*, 228 US 61, 69-70, 57 LEd 730, 734, 33 SCt 441 [443]. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 US 420, 426, 6 LEd2d 393, 399, 81 SCt 1101 [1105].

*Id.* at 484, 90 S.Ct. at 1161, 25 L.Ed.2d at 501.

As indicated, the major disputed factual issue with which we are concerned is whether a functional distinction exists among the groups of investigators. We feel at this stage that the Commonwealth's position is highly persuasive—that although contacts between units exist, the three investigative units have distinct primary functions and seldom perform duties that are within the major area of responsibility of another unit. We do not find that the existence of the Hazard Waste Prosecution Unit within the criminal unit is particularly significant, given the small size of the former and the need to account for the federal funding it receives. In further proceedings on the equal protection issue, we shall be concerned mainly with the job overlapping situation and to some degree with the flexible hours/overtime pay matter, which Commonwealth defendants have advanced as a reason for concentrating initially on reclassification and salary increases for the BCI investigators.

We likewise have found the Commonwealth defendants' position to be the stronger one with regard to the due process issue. An attempt to enforce the arbitration decision was raised unsuccessfully

by plaintiffs in the Commonwealth Court of Pennsylvania, which concluded that plaintiffs had no standing to enforce the conclusions reached in the arbitration. Plaintiffs are attempting to be heard on this matter by the Pennsylvania Supreme Court. Although plaintiffs appear to be asserting a property interest in the arbitration decision, and although seniority rights of some of the plaintiffs may have been affected, no question exists that AFSCME Council 13, the sole collective bargaining agent for plaintiffs, participated in the negotiations that led to the classification changes. Although we are inclined at this time toward the Commonwealth defendants' position on the due process claims, it seems more prudent to have these issues continue along with the equal protection claims, particularly because the same background facts apply to all of the claims, the relief sought is identical, and also because Council 13, as the sole remaining Union defendant, is alleged to have breached its duty of fair representation and to have conspired against plaintiffs.

■ As with Commonwealth defendants' summary judgment motions, we also find that defendant Council 13's position has considerable merit. In fact, we adopt here our discussion on the equal protection and due process issues addressed earlier in this memorandum. We are not granting summary judgment on the conspiracy allegations only because we are giving deference, perhaps unduly, to the legal precedent that concludes that summary judgment is seldom appropriate when a conspiracy is alleged. *See, e.g., Adickes v. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). We note here, however, the considerable evidence presented by Council 13 to refute the conspiracy averments in contrast with the much more speculative and circumstantial support provided by plaintiffs. Nevertheless, we cannot resolve the matter at this stage of the proceedings because to do so we would be required to resolve disputes as to facts and credibility.

We draw similar conclusions on the other matters addressed in the motions. Certainly the breach of fair representation issues raised by plaintiffs require far more substantiation at trial if plaintiffs expect to prevail. Plaintiffs' evidence is scanty at best with regard to any claims against Council 13, and Council 13 has considerable documentation in support of its position that it actively pursued and sought to protect the interests of the MFCU and BNI investigators.

## IV. Conclusion

Based on the foregoing discussion, an appropriate accompanying order will be entered denying the motions and cross motions for summary judgment filed in the above-captioned matters as to AFSCME Council 13 and the Commonwealth. The plaintiffs' claims under state law and for monetary damages shall be dismissed as barred by the eleventh amendment.

## ORDER

AND NOW, this 9th day of May, 1985, IT IS ORDERED that the motions and cross motions for summary judgment filed in the above-captioned matters are disposed of as follows:

1. Union defendants' motions for summary judgment are denied except that with the concurrence of the parties, all AFSCME defendants are dismissed but AFSCME Council 13.

2. Commonwealth defendants' motions for summary judgment are partially granted to the extent that plaintiffs' claims under state law and for monetary damages are dismissed as barred by the eleventh amendment.

3. Plaintiffs' motions for summary judgment are denied.