JOHN L. GUEST, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6173–77, 9115–77, 11498–77.     Filed August 3, 1979.

---

[1]Cases of the following petitioners are consolidated herewith: James Ventresca and Jordy L. Ventresca, Jerome Kobos, Edward Andrew Prebihalo, Lorraine A. Heitchue, Michael P. Grant and Mary Susan Grant, Paul A. Vlahutin and Rosalie S. Vlahutin, docket No. 9115–77; and Dennis L. Martens, docket No. 11498–77.

*Jerry R. Hatton,* for the petitioners.
*Mary Helen Weber,* for the respondent.

CHABOT, *Judge:* Respondent determined deficiencies in petitioners' Federal income tax and in excise tax under section 4973(a)[2] for 1975, as follows:

| Docket No. | Petitioners | Deficiencies in— | |
| | | Income tax | Excise tax |
| --- | --- | --- | --- |
| 6173–77 | John L. Guest | $437.60 | 0 |
| 9115–77 | James Ventresca and Jordy L. Ventresca | 296.00 | $60 |
| | Jerome Kobos | 286.18 | 60 |
| | Edward Andrew Prebihalo | 290.20 | 60 |
| | Lorraine A. Heitchue | 379.96 | 84 |
| | Michael P. Grant and Mary Susan Grant | 318.82 | 60 |
| | Paul A. Vlahutin and Rosalie S. Vlahutin | 218.68 | 60 |
| 11498–77 | Dennis L. Martens | 290.02 | 0 |

The cases have been consolidated for trial, briefs, and opinion. The issues for decision are:

(1) The constitutionality of section 219(b)(2), which operates to disallow a deduction for a contribution to an individual retirement account by an active participant in a qualified retirement plan; and

(2) The taxability under section 4973(a) of such a contribution as an excess contribution.

## FINDINGS OF FACT

Substantially all of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference.

When the petitions in these cases were filed, all the petitioners resided in Ohio.

Petitioners John L. Guest, James Ventresca, Jerome Kobos, Edward Andrew Prebihalo, Lorraine A. Heitchue, Michael P. Grant, Paul A. Vlahutin, and Dennis L. Martens (hereinafter sometimes collectively referred to as the petitioner-employees)

---

[2]Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954, as in effect for the taxable year in issue.

were, during 1975, permanent employees of Industrial Nucleonics Corp. (hereinafter referred to as Nucleonics). During 1975, all of the petitioner-employees were active participants in the Employee Pension Plan of Nucleonics (hereinafter referred to as the Nucleonics Pension Plan).

The Nucleonics Pension Plan was, during 1975, a qualified retirement plan under section 401(a). Participation in the Nucleonics Pension Plan was mandatory for all permanent employees.

As of January 1, 1976, participants in the Nucleonics Pension Plan accrued benefits at the rate of $5 per month per year of credited service, these benefits being payable beginning at age 65 (or on an actuarially reduced basis in the case of early retirement).

During 1975, the petitioner-employees made deposits to individual retirement accounts (hereinafter referred to as IRAs) in their respective names at the State Savings Co. in Columbus, Ohio, in the amounts set forth in table I.

TABLE I

| Petitioner-employee | Amount |
| --- | --- |
| John L. Guest | $1,400 |
| James Ventresca | 1,000 |
| Jerome Kobos | 1,000 |
| Edward Andrew Prebihalo | 1,000 |
| Lorraine A. Heitchue | 1,400 |
| Michael P. Grant | 1,000 |
| Paul A. Vlahutin | 1,000 |
| Dennis L. Martens | 1,000 |

On their Federal individual income tax returns for 1975, the petitioner-employees deducted the amounts set forth in table I. Respondent disallowed these deductions under section 219(b)(2).

OPINION

I. *Constitutionality of Section 219(b)(2)*

Respondent maintains that because the petitioner-employees were active participants in a qualified retirement plan for 1975,

they were ineligible to make deductible contributions to their IRAs for that year, under section 219(b)(2).[3] Petitioners do not dispute the application of the statute, but they argue that this provision is unconstitutional because it violates the due process clause of the Fifth Amendment to the Constitution, in that—

(1) The classification created by section 219(b)(2) has no rational relationship to the purpose of the legislation; and

(2) The section establishes an impermissible "irrebuttable or conclusive presumption" that all participants in qualified retirement plans will receive tax-sheltered retirement income from their plans.

Respondent contends section 219(b)(2) is constitutional.

We agree with respondent.

Where it can fairly do so, a court should interpret statutory provisions so as to avoid serious doubts as to their constitutionality. E.g., *Golden Rule Church Association v. Commissioner*, 41 T.C. 719, 730 (1964), and cases cited therein. However, petitioners' attack on the statute is a frontal one—the parties' stipulations (in accord with our understanding of the facts) have left us no choice but to assess the constitutionality of section 219(b)(2) as in effect for 1975. We proceed now to that assessment.

A. *Statutory framework.*—Section 219(a)[4] permits an individual to deduct (subject to dollar limitations and other restrictions none of which are in issue in the instant cases) amounts paid in cash to an IRA. However, section 219(b)(2)[5] disallows the

---

[3]Respondent concedes that the claimed amounts would be deductible as IRA contributions in the absence of the requirements of sec. 219(b)(2). Presumably, the parties intend particularly to refer to sec. 219(b)(2)(A)(i).

[4]SEC. 219. RETIREMENT SAVINGS.

(a) DEDUCTION ALLOWED.—In the case of an individual, there is allowed as a deduction amounts paid in cash during the taxable year by or on behalf of such individual for his benefit—

    (1) to an individual retirement account described in section 408(a),

    (2) for an individual retirement annuity described in section 408(b), or

    (3) for a retirement bond described in section 409 (but only if the bond is not redeemed within 12 months of the date of its issuance).

[The subsequent amendment of this provision (by sec. 1501 (b)(4)(A) of the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1736) does not affect the instant cases.]

[5]SEC. 219. RETIREMENT SAVINGS.

(b) LIMITATIONS AND RESTRICTIONS.—

    \*      \*      \*      \*      \*      \*      \*

    (2) COVERED BY CERTAIN OTHER PLANS.—No deduction is allowed under subsection (a) for an individual for the taxable year if for any part of such year—

    (A) he was an active participant in—

      (i) a plan described in section 401(a) which includes a trust exempt from tax under section

deduction for a year to any individual who, for any part of that year, is an active participant in a qualified plan under section 401(a), a section 403(a) annuity plan, a section 405(a) qualified bond purchase plan, or any government employee plan (whether or not tax-qualified). This disqualification applies also to any individual for a year if, for any part of that year, the individual's employer makes contributions for a section 403(b) annuity (a so-called tax-sheltered annuity) for that individual.

B. *Legislative history.*—Section 219 and the related sections establishing IRAs were enacted by section 2002 of the Employee Retirement Income Security Act of 1974 (hereinafter sometimes referred to as ERISA), Pub. L. 93–406, 88 Stat. 958.

Examination of the legislative history makes it clear that the Congress was concerned about strengthening employee benefit arrangements, largely to be sure that benefits that appeared to be promised would indeed be forthcoming. However, recognizing that perhaps half the workforce was not covered by such arrangements, the Congress provided for IRAs.

For example, under the heading *"Problem areas,"* the report of the Committee on Ways and Means of the House of Representatives (H. Rept. 93–807, to accompany H.R. 12855, p. 4, (1974), 1974–3 C.B. (Supp.) 236, 239) stated as follows:

*Discrimination against individuals not covered by pension plans.*—Individuals who are outside of qualified pension plans have no opportunity to set aside income for their own retirement under the favorable tax treatment accorded to individuals covered by such plans. These individuals must save for their retirement from income after tax and must pay tax currently on the income earned by their retirement savings.

The report went on (H. Rept. 93–807, *supra* at 126, 1974–3 C.B. (Supp.) at 361) to state the following:

*Present Law*
Generally, an employee is not allowed a deduction for amounts contributed

---

501(a),

    (ii) an annuity plan described in section 403(a),

    (iii) a qualified bond purchase plan described in section 405(a), or

    (iv) a plan established for its employees by the United States, by a State or political division thereof, or by an agency or instrumentality of any of the foregoing, or

    (B) amounts were contributed by his employer for an annuity contract described in section 403 (b) (whether or not his rights in such contract are nonforfeitable).

[The subsequent amendment of this provision (by sec. 1901(a)(32) of the Tax Reform Act of 1976, Pub. L. 94–455, 90 Stat. 1769) does not affect the instant cases.]

from his own funds to a retirement plan. While an employer's qualified plan may allow employees to contribute their own funds to the plan, no deduction is allowed for these contributions (except to the extent that tax excludable contributions made in connection with salary reduction plans may be viewed as employee contributions). However, the income earned on employee contributions to an employer's qualified plan is not taxed until it is distributed.

*General reasons for change*

While in the case of many millions of employees, provision is made for their retirement out of tax-free dollars by their participation in qualified retirement plans, many other employees do not have the opportunity to participate in qualified plans. Often, plans are not available because an employer is not willing to incur the costs of contributing to a retirement plan since, in general, the employer contributes funds which are in addition to the compensation otherwise paid his employees. Employees who are not covered under a qualified plan are disadvantaged by the fact that earnings on their retirement savings are subject to tax, and grow more slowly than the tax-sheltered earnings on contributions to a qualified plan.

Your committee's bill deals with this problem by making available a special deduction for amounts set aside for retirement by employees who are not covered under a qualified plan (including an H.R. 10 plan), a government plan, or a tax exempt organization annuity plan (sec. 403(b)). [Fn. refs. omitted.]

Similar statements appear in the Ways and Means Committee report at pages 2, 11, 32, and 128–129. The IRA provisions first appeared in the version of the bill reported by the Committee on Finance of the Senate. See S. Rept. 93–383, to accompany S. 1179, pp. 2, 4, 9, 13, 27–28, 130–131 (1973), 1974–3 C.B. (Supp.) 81, 83, 88, 92, 106–107, 209–210. Also see H. Rept. 93–1280 (Conf. Rept.), p. 336 (1974), 1974–3 C.B. 415, 497.

Further consideration was given to this matter in the course of the legislative process that resulted in enactment of the Tax Reform Act of 1976, Pub. L. 94–455. Concern expressed about the "poor plans problem" resulted in a provision in the House of Representatives version of the bill, which was explained in the Ways and Means Committee report (H. Rept. 94–658, p. 346 (1975), 1976–3 C.B. (Vol. 2) 695, 1038) as follows:

*General reasons for change*

If an employee is an active participant in a qualified pension plan, etc., he is not allowed to make deductible contributions to an IRA or to the plan. Even though the benefits provided by such a plan may be less than the employee could provide for himself under an IRA, the employee is not allowed to make up the difference through deductible IRA contributions or by making deductible contributions to the plan. Your committee understands that, as a result, some employees under such plans have withdrawn from active plan participation and it is expected that significant numbers of employees may begin to withdraw in the near future. In some cases, however, plan participa-

tion is mandatory, and the employees are unable to withdraw. The problem is most acute for plans established before enactment of ERISA because those plans were designed without taking IRA's into account.

In order to permit employees in this situation to provide for their own retirement out of before-tax funds, the bill makes two major changes in the law in this area: (1) an active participant in a qualified plan or section 403(b) annuity contract (but not a participant in a governmental plan, whether or not qualified) is to be permitted to make contributions to an IRA for himself or herself, and (2) an active participant in a qualified plan (other than a governmental plan) which was in existence on the day ERISA was enacted is to be permitted to deduct employee contributions to that plan. The IRA limits on deductions continue to apply, but they are to be reduced by the amount of employer contributions allocable to the employee. [Fn. ref. omitted.]

The Ways and Means Committee estimated that this amendment would reduce calendar year tax liabilities by $526 million for 1981. H. Rept. 94–658, *supra* at 353, 1976–3 C.B. (Vol. 2) at 1045.

The Finance Committee also was concerned about the matter. Its report (S. Rept. 94–938, p. 448, (1976), 1976–3 C.B. (Vol. 3) 49, 486) included the following:

*Reasons for change*

The House bill would (1) allow an active participant in a qualified plan or tax-sheltered annuity to make deductible contributions to an IRA, and (2) allow a participant active in a plan on the day ERISA was enacted to deduct employee contributions to that plan. Under these provisions of the House bill, the IRA limits on deductions would continue to apply, but they would be reduced by the amount of employer contributions allocable to the employee. These provisions of the House bill would not apply to an individual who participates in a governmental plan. The committee deleted this House bill provision.

If, however, the provisions of the House bill are eventually adopted, the committee believes that they should apply to government employees. Therefore, the committee has adopted provisions under which a participant in a government plan would be permitted to make deductible contributions to an IRA (but only if a provision like that in the House bill becomes effective). In the event the government employee-type IRA becomes effective, the IRA limits on deductions would continue to apply, but they would be reduced by the amount of employer contributions under the regular pension plan allocable to the employee.

The Joint Conference Committee on the 1976 Act dropped both the House and the Senate provision but provided for a study of the problem. S. Rept. 94–1236 (Conf. Rept.), pp. 242–243, 512 (1976), 1976–3 C.B. (Vol. 3) 807, 916. See General Explanation of the Tax Reform Act of 1976, prepared by the staff of the Joint Committee on Taxation, pp. 439–440, (1976), 1976–3 C.B. (Vol. 2) 1, 451–452.

The matter arose again during consideration of the Revenue Act of 1978, Pub. L. 95–600. The Finance Committee expressed concerns similar to those noted above in connection with the Tax Reform Act of 1976. The proposed legislative solution was briefly described as follows:

> The committee believes that changes are necessary in order to make the operation of the IRA program more uniform and to increase the incentives for employees to save for their own retirement. Therefore the committee has adopted a provision which will allow an employee who participates in a private qualified retirement plan maintained by his or her employer to deduct contributions either to that plan or to an IRA. This provision will tend to resolve the differing treatment accorded to employees whose employers do and do not maintain qualified plans, but will also create a tax incentive for increased retirement savings and provide more uniform rules for the treatment of employee contributions to tax-favored arrangements. The provision will result in such contributions being made on a nondiscriminatory basis, so that tax benefits and economic benefits will be apportioned among employees at all income levels rather than being concentrated among higher income employees.

> \* \* \* \* \* \* \*

> Proposals have been made in the Congress to change the IRA rules to allow an employee participating in a qualified plan to make a deductible IRA contribution equal to the difference between the employer contributions for his or her benefit and the IRA deduction limitation under current law. Although such proposals could result in a more precise application of the overall IRA limitations, they would necessarily result in substantial complexity and administrative problems for employers, employees, and the Internal Revenue Service. The committee believes that the new IRA rules will achieve substantial equity for most employees. Moreover, the provision insures that deductions will be available on a nondiscriminatory basis, whereas nondiscrimination cannot be achieved within the context of the existing IRA limitations. [S. Rept. 95–1263, pp. 89–90 (1978), 1978–3 C.B. (Vol. 1) 315, 387–388.]

The Finance Committee estimated that this amendment would reduce revenues by $536 million in fiscal 1983. S. Rept. 95–1263, *supra* at 91, 1978–3 C.B. at 389.

Once again, the Joint Conference Committee decided to omit the provision. H. Rept. 95–1800 (Conf. Rept.), p. 211 (1978), 1978–3 C.B. (Vol. 1) 521, 545.

C. *Rational relationship test.*—Petitioner asserts that the classification created by section 219(b)(2) has no rational relationship to the purpose of the legislation and that, as a result, the statute violates the equal protection of the laws concepts

(applicable to the States under section 1 of the 14th Amendment[6]) as they are embodied in the 5th Amendment[7] to the United States Constitution. *Johnson v. Robison*, 415 U.S. 361, 364 n.4 (1974); *Bolling v. Sharpe*, 347 U.S. 497 (1954).

It is well settled that deductions are a matter of legislative grace. E.g., *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). However, if Congress decides to grant deductions of a general type, a denial of them to a particular class may be unconstitutional if that denial infringes on a constitutionally protected fundamental right or involves an otherwise suspect classification. *Reed v. Reed*, 404 U.S. 71 (1971); *Speiser v. Randall*, 357 U.S. 513, 518 (1958); *First Unit. Church v. Los Angeles*, 357 U.S. 545, 548 (1958); *Grosjean v. American Press Co.*, 297 U.S. 233, 250 (1936); *Moritz v. Commissioner*, 469 F.2d 466 (10th Cir. 1972), revg. 55 T.C. 113 (1970). See *Shapiro v. Thompson*, 394 U.S. 618, 627, 630–631 (1969). See also *Dandridge v. Williams*, 397 U.S. 471, 485 n. 17 (1970); *United States v. Carolene Products Co.*, 304 U.S. 144, 152 n. 4 (1938).

A classification not involving a fundamental right or suspect category is constitutional if the classification is reasonable and rests upon some ground of difference having a fair and substantial relation to the object of the legislation. *Keeler v. Commissioner*, 70 T.C. 279, 285 (1978). As the Supreme Court stated in upholding a State welfare regulation under the equal protection clause of the 14th Amendment *(Dandridge v. Williams*, 397 U.S. at 485):

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U.S. 61, 78. "The problems of government are practical ones and may justify, if they do not require, rough

---

[6]"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[7]"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co.* v. *City of Chicago,* 228 U.S. 61, 69–70. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan* v. *Maryland,* 366 U.S. 420, 426.

"Normally, a legislative classification will not be set aside if any state of facts rationally justifying it is demonstrated to or perceived by the courts." *United States v. Maryland Savings-Share Ins. Corp.,* 400 U.S. 4, 6 (1970), revg. per curiam 308 F. Supp. 761 (D. Md. 1970). Respondent need not demonstrate that the Congress actually considered such a state of facts, if the facts are perceptible to this Court. *Keeler v. Commissioner,* 70 T.C. at 285; *Hamilton v. Commissioner,* 68 T.C. 603, 607 (1977). Finally, there is a presumption of the constitutionality of an act of Congress, which is particularly strong in the case of a revenue provision, e.g., *Nicol v. Ames,* 173 U.S. 509, 514–515 (1899). The Federal Government traditionally has had very broad classification powers in the taxation field. *Barter v. United States,* 550 F.2d 1239, 1240 (7th Cir. 1977), affg. per curiam *Johnson v. United States,* 422 F. Supp. 958, 971 (N.D. Ind. 1976); *Hamilton v. Commissioner,* 68 T.C. at 608.

Clearly, the enactment of section 219(b)(2), excluding the petitioner-employees and tens of millions of others from the benefits of the IRA program, was not an inadvertence. Nor did the fact escape the attention of the Congress that, as a result, people eligible to establish IRAs might be better off than active participants in "poor plans" and active participants whose accrued benefits are likely to be forfeited. (In this connection, it may be noted that no reported case has been brought to this Court's attention in which it was contended that the pre-ERISA law created an unconstitutional classification that discriminated in favor of those who were active participants in qualified plans because they received benefits not available to those who did not participate in qualified plans.)

The Congress has continued to examine into how the existing inequality might be reduced. Thus far, it has been defeated by considerations of undue complexity and revenue effects exceeding half a billion dollars a year.

Were we to declare section 219(b)(2) (or subparagraph (A)(i) thereof) unconstitutional, we would be faced with the same problems of line-drawing that have thus far defeated the Congress' efforts. Cf. *Moritz v. Commissioner, supra.* As the

Supreme Court stated in *Metropolis Theatre Co. v. Chicago*, 228 U.S. 61, 69–70 (1913):

The problems of government are practical ones and may justify, if they do not require, rough accommodations * * * . Mere errors of government are not subject to our judicial review. It is only its palpably arbitrary exercises which can be declared void under the Fourteenth Amendment; * * *

In accord with the views of the Court of Appeals for the Second Circuit in *Orzechowski v. Commissioner*, 592 F.2d 677, 678 (1979), affg. 69 T.C. 750 (1978), we conclude that the classification created by section 219(b)(2) does not constitute a denial of equal protection of the laws and does not violate the due process clause of the Fifth Amendment to the United States Constitution.

D. *Irrebuttable presumption.*—Petitioners contend that section 219(b)(2) creates an "irrebuttable presumption" that violates the due process provisions of the Fifth Amendment. See n. 7 *supra*. Petitioners' contention is set forth in their answering brief as follows:

The conclusive presumption that, merely because one is a participant in a qualified retirement plan tax sheltered retirement income will be forthcoming is unfounded, and a taxing provision based on such a conclusive presumption is unconstitutional. A statute which imposes a tax upon an assumption of fact which the taxpayer is forbidden to controvert is so arbitrary that it cannot stand. *Heiner v. Donnan*, 285 U.S. 312 * * *

The general principle of the doctrine of the unconstitutionality of "irrebuttable presumptions" is that crucial facts may not constitutionally be conclusively presumed against someone so as to deprive that person of any significant interest in life, liberty, or property.

The current status of the irrebuttable presumption approach has been dealt with by the Supreme Court in a number of cases during the current decade. These cases are analyzed in the opinion of the Court of Appeals for the Second Circuit in *Sakol v. Commissioner*, 574 F.2d 694, 696–698 (1978), affg. 67 T.C. 986 (1977), and we need not repeat the analysis here. We conclude that the issue presented herein is a "congressional judgment * * * in the economic area [which] will be upheld when there is a rational relationship between the criteria set forth in the statutory mandate and a legitimate congressional purpose." 574 F.2d at 698.

Thus, assuming arguendo that section 219(b)(2) constitutes an

irrebuttable presumption, it is acceptable as long as the rational relationship test is satisfied. We have already determined (part C *supra*) that the restriction of section 219(b)(2) rationally relates to a reasonable concern of Congress. Thus section 219(b)(2) does not create an unconstitutional presumption.

## II. *Liability for Section 4973 Excise Tax*

Petitioners argue that, if we uphold the constitutionality of section 219(b)(2), then the 6-percent excise tax imposed by section 4973 cannot be imposed because there are no excess contributions to be so taxed, since no contributions are permitted under section 219(b)(2). Respondent disagrees.

We agree with respondent that the section 4973 tax applies.

The parties have favored us with little information about the IRAs. We are not told why the section 4973 tax is asserted only as to the petitioners in docket No. 9115–77 and not as to the petitioners in docket Nos. 6173–77 and 11498–77. Apart from petitioners' argument that a thing forbidden to be done must be treated, for purposes of the excise tax provisions, as not having been done, all the parties have proceeded on the understanding that the petitioner-employees in docket No. 9115–77 established valid IRAs in 1975.

The identical issue was before us in *Orzechowski v. Commissioner, supra*. Petitioners have suggested no basis for reexamining or distinguishing our opinion in that case, and we see none. On the basis of *Orzechowski*, we hold that the section 4973 tax applies in docket No. 9115–77.

---

The notices of deficiency addressed to the petitioners in docket No. 9115–77 did not set forth separately the asserted deficiencies in individual income taxes and the asserted deficiencies in section 4973 taxes; those schedules attached to the notices that are in the record in this case describe the aggregate asserted deficiencies as being in "individual income" taxes. It appears that those notices of deficiency addressed to James Ventresca and Jordy L. Ventresca, Michael P. Grant and Mary Susan Grant, and Paul A. Vlahutin and Rosalie S. Vlahutin may be understood as asserting joint liabilities for the excise tax deficiencies against the spouses of the petitioner-employees. Since it is not clear that such liabilities lie against the spouses

(compare the last sentence of section 4973(a), as in effect in 1975, with so much of section 6013(a) as precedes paragraph (l) thereof and with section 1.6017–1(b)(2), Income Tax Regs.), any question as to such liability is to be resolved in proceedings under Rule 155.

> *Decisions will be entered for the respondent in docket Nos. 6173–77 and 11498–77.*

> *Decision will be entered under Rule 155 in docket No. 9115–77.*