WALTER J. WASOWSKI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wasowski v. Commissioner
Docket Nos. 120-82, 14045-82
United States Tax Court
T.C. Memo 1983-290; 1983 Tax Ct. Memo LEXIS 490; 46 T.C.M. (CCH) 230; T.C.M. (RIA) 83290; May 25, 1983. Walter J. Wasowski, pro se. Pamela Piland, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: These consolidated cases were assigned to and heard by Special Trial Judge Darrell D. Hallett pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules *491 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE HALLETT, Special Trial Judge: Respondent determined deficiencies in petitioner's 1978 and 1979 Federal income taxes in the amounts of $4,128.58 and $5.459, respectively and imposed additions to tax for 1978 and 1979 as provided by section 6653(a) in the respective amounts of $206.43 and $272.95. Concessions having been made by the parties, the remaining issues for decision are (1) whether petitioner is entitled to a deduction for contributions to an Individual Retirement Account (IRA) for 1978 and 1979; (2) whether petitioner is entitled to a deduction for "away from home" travel expenses for the years 1978 and 1979; and (3) whether petitioner is liable for the *492 additions to tax provided by section 6653(a). The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner was a resident of Los Angeles, California, at the time the petitions were filed in these cases. During and prior to the years in question, petitioner was employed as an aircraft mechanic and avionic technician. Prior to 1978, petitioner worked for Boeing Aircraft Company in Baghdad. In January 1978, he obtained employment with American Airlines in the Los Angeles area. During June of 1978, a transfer of aircraft modification workload from Los Angeles to Tulsa, Oklahoma, resulted in a reduction in force at Los Angeles of approximately 55 aircraft line mechanics. Due to his lack of seniority with American Airlines, petitioner was laid off. However, he and other personnel affected by the shift in workload were informed by the company that they would retain recall rights in the event that workload requirements increased at some later date. Laid off personnel were also informed that they could apply with the company in Tulsa and still retain their recall rights to Los Angeles. After his lay off, petitioner looked for *493 work in the Los Angeles area. When his efforts in this regard proved unsuccessful, he traveled to Tulsa and, after seeking (unsuccessfully) employment with several firms in the area, he was offered a job by American Airlines, which he accepted. Petitioner was hired by American Airlines in Tulsa in July 1978 as a "regular aircraft mechanic" which involved a different classification than that which he had in Los Angeles as an "avionics mechanic". Petitioner was told by American Airline officials when they hired him in Tulsa that the duration of his employment would be "as long as they could hold him." Assuming the availability of work, the job would last as long as petitioner desired to work there and was in good standing with the company. Throughout his stay in Tulsa, petitioner maintained a house in Los Angeles, where his elderly parents resided. To make the trip from Los Angeles to Tulsa, petitioner purchased a truck sufficient in size to transport his aircraft maintenance tools and two suitcases holding his personal belongings, and he drove the truck to Tulsa. He lived in a motel in the Tulsa area. Sometime in mid-1979, petitioner was recalled by American Airlines in the *494 Los Angeles area for employment there. Petitioner voluntarily terminated his employment at Tulsa and returned to the Los Angeles area where he worked for American Airlines during the remainder of 1979. At issue in this case are the amounts claimed by petitioner on his 1978 and 1979 returns representing transportation costs, meals, and lodging associated with his travel to and from Tulsa and Los Angeles and meals and lodging expenses incurred while living near his place of employment. [3]
Section 162(a)(2) allows a deduction for traveling expenses, including meals and lodging, if incurred by the taxpayer in connection with a trade *495 or business and while "away from home". A taxpayer's "home" for purposes of section 162(a) is the vicinity of his principal place of employment. Commissioner v. Stidger,386 U.S. 287 (1967). However, respondent has recognized, and this and other courts have applied the rule, that where a taxpayer who has a principal place of employment goes elsewhere to work on a "temporary" basis, his home for purposes of section 162(a) remains in the vicinity of his prior place of employment. McCallister v. Commissioner,70 T.C. 505, 508-509 (1978). Temporary employment for purposes of applying this rule has been defined as the kind of employment that can be expected to last for only a short period of time. Albert v. Commissioner,13 T.C. 129, 131 (1949); McCallister v. Commissioner,supra.On the other hand, employment is indefinite if its termination within a "fixed or reasonably short period of time" cannot be foreseen. Stricker v. Commissioner,54 T.C. 355, 361 (1970), affd. 438 F.2d 1216 (6th Cir. 1971). The present case is appealable to the Ninth Circuit, and that court has expressed a slightly *496 different view as to the meaning of indefinite employment. The Ninth Circuit's view, as expressed in Harvey v. Commissioner,283 F.2d 491, 495 (9th Cir. 1960) revg. 32 T.C. 1368 (1959), is that employment is indefinite "* * * if there is a reasonable probability known to [the taxpayer] that he may be employed for a long period of time at his new station. What contitutes 'a long period of time' varies with circumstances surrounding each case." Subsequent opinions by the Ninth Circuit reveal that its approach to the exception to the general "tax home" rule does not differ materially from the view of this Court. See Coombs v. Commissioner,608 F.2d 1269, 1274-1276 (9th Cir. 1979), affg. in part and revg. in part, 67 T.C. 426 (1976); Wills v. Commissioner,411 F.2d 537, 541 (9th Cir. 1969), affg. 48 T.C. 308 (1967); Wright v. Hartsell,305 F.2d 221, 224 (9th Cir. 1962). However, on this record it is unnecessary to decide what differences, if any, exist between the two approaches because we conclude that under either the test as applied by this Court or that applied by *497 the Court of Appeals for the Ninth Circuit, petitioner's employment in Tulsa does not qualify as temporary. It has been stipulated, and petitioner confirmed in his own testimony at trial, that his arrangement with American Airlines when he was employed in Tulsa was that he would remain employed as long as there was work available, he was in good standing, and he wished to stay there. He in fact terminated his employment in approximately one year only because of his personal decision to return to the Los Angeles area when work became available there. This is simply not a situation where the taxpayer can be considered as having been employed on a "temporary" basis. [4]
The next issue involves the deductibility of contributions made by petitioner during 1978 and 1979 to *498 an IRA. Although not claimed on his returns as a deduction, petitioner contended at trial, and we accept his testimony as a fact, that during 1978 and 1979, he made payments of $1,500 to an IRA. He later withdrew the contributions from the account based upon his understanding that the contributions did not qualify for deduction. During 1978 and 1979 and in connection with petitioner's employment by American Airlines, he was covered by a retirement plan maintained by his employer and contributions were made to the plan on his behalf. However, petitioner did not have a vested interest in the plan because he had not then reached the minimum age and service requirements of the plan. The law in effect for 1978 authorized a deduction with respect to contributions to an IRA, but it specifically prohibited a deduction for a taxpayer who was an active participant in a qualified retirement plan. Section 219(b)(2)(a)(I)(b). Petitioner contends that he was not an active participant in the retirement plan maintained by his employer during 1978 and 1979 because he did not then have vested benefits in the plan. However, we have previously addressed this issue and concluded that Congress *499 intended the term "active participant" as it appeared in section 219 to include not only individuals whose benefits in a qualified plan are vested, but those who are accruing benefits that would be forfeited if the individual does not fulfill the minimum age and service requirements. This is because Congress was concerned with the potential double tax benefit an individual would obtain if he were allowed a deduction for contributions to an IRA at the same time he was accruing benefits in a qualified retirement plan, and those benefits later became fully vested. Orzechowski v. Commissioner,592 F.2d 677 (2nd Cir. 1979), affg. 69 T.C. 750 (1978). See also Guest v. Commissioner,72 T.C. 768 (1979); Horvath v. Commissioner,78 T.C. 86 (1982); Johnson v. Commissioner,620 F.2d 153 (7th Cir. 1980); Johnson, Jr. v. Commissioner,661 F.2d 53 (5th Cir. 1981) affg. 74 T.C. 1057 (1980); Hildebrand v. Commissioner,683 F.2d 57 (3rd Cir. 1982). [5] Accordingly, since petitioner was covered by a qualified retirement plan maintained by his employer during the years in *500 question, his claimed deductions must be disallowed. Finally, we must determine the correctness of respondent's determination for both years in question that petitioner is liable for the additions to tax provided by section 6653(a) in the case of negligence or intentional disregard of the rules and regulations. Petitioner had the burden of proof on this matter, Welch v. Helvering,290 U.S. 111 (1933), and presented no evidence. Accordingly, we must decide this issue for the respondent. Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment and on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable in this case.
3. Although there is no explanation on in the record, we note that on his 1978 return, petitioner claimed meals and lodging for 360 days of the year. Accordingly, he apparently claimed meals and lodging expenses during his period of employment in Los Angeles as well as while he was employed in Tulsa. On his 1979 return, petitioner claimed meals and lodging for 210 days. Although it is not specifically covered in the record, we assume from petitioner's contention at trial that this represents the period of time in 1979 that he was living in Tulsa.↩
4. As noted previously, petitioner claimed on his return for 1978 meals and lodging for 360 days, which would include the period during the first part of the year when he lived and worked in Los Angeles. Petitioner has the burden of proving that his employment in the Los Angeles area qualified as temporary employment, and he clearly failed to do so. Welch v. Helvering,290 U.S. 111↩ (1933).
5. We note that the decision in Foulkes v. Commissioner,638 F.2d 1105↩ (7th Cir. 1981), revg. a Memorandum Opinion of this Court, is distinguishable since petitioner accrued benefits based on his participation in the plan during the years 1978 and 1979.