HORACE F. BATSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Batson v. Commissioner
Docket No. 2262-82.
United States Tax Court
T.C. Memo 1983-545; 1983 Tax Ct. Memo LEXIS 244; 46 T.C.M. (CCH) 1301; T.C.M. (RIA) 83545; September 6, 1983. Horace F. Batson, pro se. Robert P. Crowther, for the respondent. SCOTT
MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioner's income taxes for the calendar years 1978 and 1979 in the amounts of $2,773.59 and $5,833.15, respectively, and additions to tax under section 6653(a) [1] in the amounts of $138.68 and $291.66, respectively. The issues for decision are: (1) Whether petitioner is entitled to deduct expenses in addition to those allowed or conceded by respondent in connection ith his rental of certain properties in each of the years here in issue; (2) whether petitioner is estopped to deny that depreciation as determined in Batson v. Commissioner,T.C. Memo. 1982-78 (the prior Batson case), for the calendar years 1976 and 1977 is the proper depreciation on his rental properties *247 for the years here in issue; (3) if petitioner is not estopped to deny that the amount of depreciation determined in the prior Batson case is the appropriate depreciation for each of the years here in issue, has respondent sustained his affirmative allegation in his amendment to answer that the amount of depreciation allowed to petitioner in the notice of deficiency is excessive; [2]
(4) whether petitioner is estopped to deny that payments in the amount of $1,842 made by petitioner to a Mr. and Mrs. McMahan in each of the years here in issue were payments on an option rather than deductible interest payments by the decision in the prior Batson case, and if petitioner is not so estopped, are these payments deductible interest payments; (5) whether petitioner is entitled to deduct $1,500 in each year here in issue as payment to an individual retirement account (IRA); (6) whether petitioner is entitled to a capital loss deduction of $1,500 in each of the years here in issue because of worthlessness of stock; (7) whether respondent properly determined that petitioner had unreported interest income in the year 1979 in the amount of $4,239.85; and (8) whether petitioner *248 is liable for the additions to tax under section 6653(a) as determined by respondent in the notice of deficiency. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, who resided in Tennessee at the time of the filing of his petition in this case, filed Federal income tax returns for the calendar *249 years 1978 and 1979 with the Director, Internal Revenue Service Center, Memphis, Tennessee. Sometime between 1970 and 1976, after petitioner and his wife separated, petitioner began living at times at his mother's home in Clarksville, Tennessee. Petitioner was employed as an engineer by DuPont Company in Nashville, Tennessee. He owned a duplex at 1940 Warfield Drive in Nashville which was not rented during the years here in issue and for a number of years prior thereto. Petitioner had a telephone in the duplex at 1940 Warfield Drive and sometimes received mail there. The duplex contained a living room, two bedrooms, a kitchen, a hall and a bath. During the summer months, petitioner stayed in one of the bedrooms at 1940 Warfield Drive in Nashville on an average of one night a week, and during the winter months he stayed there on an average of three nights a week. Petitioner had various types of material which he used in repairing or improving his rental properties stored in the living room and one of the bedrooms of the duplex at 1940 Warfield Drive. He also had some materials stored in the kitchen. Petitioner at times used his automobile to procure materials to use in *250 repairing or repainting rental properties and in certain other respects in connection with the renting or collection of rents on his rented properties. By a document executed on January 2, 1967, and recorded on April 17, 1967, W. C. McMahan and his wife, Effie M. McMahan, granted to petitioner an option to purchase specifically described real estate, including all mineral rights. By a document executed on January 31, 1976, this option was extended for a maximum period of 10 years for an annual payment of $1,842. This option and the extension thereof are the same agreements which were involved in the prior Batson case. During the years 1976 and 1977, involved in the prior Batson, case, petitioner had made the payment of $1,842 to Mr. and Mrs. McMahan and had deducted the amounts as interest paid. Petitioner deducted the $1,842 paid to Mr. and Mrs. McMahan in each of the years here in issue as interest. In the prior Batson case, we held that the payments of $1,842 were not deductible since they were not interest paid or accrued within the taxable year on an indebtedness within the meaning of section 163(a). In December 1977, petitioner opened an account at Security *251 Federal Savings and Loan Association in his name as trustee for his daughter, Lynn M. Batson. The account funds were subject to withdrawal only by petitioner. On the reverse side of the signature card opening the account was a statement entitled "Discretionary Revocable Trust Agreement." This agreement, which was signed by petitioner, provided that the funds in the account, together with the earnings thereon and any future additions thereto, were conveyed to the trust for the benefit of the beneficiary on the condition that the trustee is authorized to "hold, manage, pledge, invest and reinvest" the funds in his sole discretion, and the undersigned grantor reserves the right to revoke the trust "in part or in full at any time and any partial or complete withdrawal by the original trustee if he is the grantor shall be a revocation by the grantor to the extent of such withdrawal." The instrument provided that the trust, subject to the right of revocation, should continue for the life of the grantor and thereafter until the beneficiary is 45 years of age. The money placed into this account was money of petitioner's and any withdrawals made from the account were made by petitioner. *252 Prior to 1979, petitioner opened a similar account at Home Federal of Nashville (now Metropolitan Federal). Interest on the two accounts for the year 1979 totaled $4,075.85. During each of the years 1978 and 1979, petitioner placed $1,500 in an IRA. During each of these years, petitioner was an employee of DuPont Company in Nashville and in his capacity as an employee was covered by the DuPont Company's pension plan. The DuPont pension plan, under which petitioner was covered, was a noncontributory plan and petitioner made no contributions to the plan. In January 1969, petitioner purchased 200 shares of Management Television Systems stock for $4,300, and in March 1969, purchased 100 shares of Convenience Foods of America, Inc., stock for $300. During the years here in issue, petitioner still held these shares of stock and in fact still held them at the date of the trial of this case. Petitioner, on his 1978 and 1979 Federal income tax returns, listed as rental properties 1930 Warfield Street, Nashville, Tennessee; 1934 Warfield Street, Nashville, Tennessee; 1938 Warfield Street, Nashville, Tennessee; Route No. 1, Clarksville Highway; Farm Route 1, Clarksville Highway; *253 and Utility Buildings, Clarksville Highway. For the year 1978, petitioner showed total rentals received of $7,660, depreciation claimed of $5,221.49, other expenses of $5,818.91, with a loss from his rental operation of $3,380.40. For the year 1979, petitioner showed total rentals received from his rental properties of $8,175, depreciation claimed of $5,221.49, other expenses of $5,094.91, with a loss of $2,141.40 from his rental operation. On his Federal income tax return for 1978, petitioner deducted interest payments of $2,319.72, which included the $1,842 paid to Mr. and Mrs. McMahan. On his 1979 return, petitioner deducted $2,250.41 as interest payments, which included the $1,842 paid to Mr. and Mrs. McMahan. On his return for each of the years 1978 and 1979, petitioner deducted $1,500 as a payment to an IRA. On each of these returns, petitioner deducted $1,500 as a capital loss. On his Federal income tax return for 1979, petitioner reported interest income of $56.15. Respondent in his notice of deficiency to petitioner, determined that for the years 1978 and 1979 petitioner realized rental profits in the amounts of $1,516.67 and $4,446.59, respectively, rather than *254 the losses claimed on his returns. Respondent computed petitioner's rental income for 1978 by subtracting from the reported rental income of $7,660 total expenses (including depreciation) of $6,143.33. Respondent computed depreciation on petitioner's rental properties for the years 1978 and 1979 as follows: Description of Property
Remaining cost
or Group and
Depreciation
or other basis
Guideline Class
allowed or
to be recovered
(Exclude land and other
Date
Cost or
allowable in
after year ending
non-depreciable
property)
acquired
other basis
prior years
12/31/77
1938 Warfield *
(Fully Depreciated in prior years)
1930 Warfield **
7/16/65
$14,749.32
$10,441.79
$4,307.53
1934 Warfield **
11/1/62
14,055.73
7,848.26
6,207.47
Farm **
1/1/70
22,011.10
9,921.80
12,089.30
Rt. 1, Clarksville
Hwy. **
10/1/66
22,324.55
8,492.26
18,832.29
Utility Building *
1/1/70
1,027.87
666.48
361.39
Total depreciation
deduction allowable
on items changed
Description of Property or
Rate(%)
Group and Guideline Class
of
Depreciation Allowable
(Exclude land and other
life
Tax Years Ending
non-depreciable property)
Method
(Years)
12/31/78
12/31/79
1938 Warfield *
1930 Warfield **
S/L
20 yrs.
$ 737.46
$ 737.46
1934 Warfield **
S/L
20 yrs.
702.78
702.78
Farm **
S/L
20 yrs.
1,100.55
1,100.55
Rt. 1, Clarksville
Hwy. **
S/L
20 yrs.
1,116.22
1,116.22
Utility Building *
S/L
20 yrs.
51.40
51.40
Total depreciation deduction
allowable on items changed
$3,708.41
$3,708.41
*255 For the year 1979, respondent accepted the $8,175 of rental income shown on petitioner's return and allowed zero of other rental expenses, but deducted the $3,708.41 of depreciation, as above set forth, resulting in a net profit from petitioner's rental operation of $4,466.59. [3]
*256 Respondent in his notice of deficiency determined that of the interest deductions claimed by petitioner in 1978 and 1979, the amount of $1,842 in each year was not allowable since it had not been established that this amount paid in each year to Mr. McMahan represents interest paid on a bona fide indebtedness rather than an option to purchase. Respondent disallowed petitioner's claimed deduction of $1,500 in each of the years 1978 and 1979 as a payment to an IRA, with the explanation that petitioner had not established that this amount met the qualifying requirements of section 219. Respondent, for each of the years 1978 and 1979, disallowed the claimed $1,500 capital loss deduction with the explanation that petitioner had not established that the stock of Management Television System became worthless during the taxable year or that any deductible loss was sustained during the taxable year. For the year 1979, respondent increased petitioner's taxable income as reported by $4,239.85 of interest income, explaining that petitioner had received interest income of $4,296 rather than the $56.15 reported on his return. Petitioner concedes that of the $4,239.85 he should have reported *257 $164 of interest from a credit union, but contests inclusion in his income of the $4,075.85 of interest which was paid on the two savings accounts which he had in his name as trustee for his daughter. Respondent by amendment to his answer alleged that petitioner was collaterally estopped by the decision in the prior Batson case to contest the fact that the $1,842 payment in each year here in issue to Mr. and Mrs. McMahan was not deductible as interest paid and that petitioner was estopped to deny that depreciation on his rental properties was greater than the depreciation determined for the years 1976 and 1977 in the prior Batson case. Since respondent had allowed petitioner depreciation in each of the years here in issue in excess of the amount he alleged was properly allowable, he claimed an increased deficiency. OPINION Petitioner argues that he should be allowed additional amounts of expenses in connection with his rental properties in each of the years here in issue. He claims he drove his automobile more than 1,000 miles each year in connection with his rental activities. He also claims he should be allowed the costs he incurred in connection with 1940 Warfield *258 Drive which he argues was used in connection with his rental activities. Petitioner, at the trial, did not testify with any definiteness with respect to his automobile costs in connection with his rental properties. He put into evidence a day book or diary for each year which had certain mileage figures in it. To an appreciable extent, the mileage shown was mileage driven from Clarksville to Nashville and return for petitioner's commuting to work when he did not stay overnight in Nashville. These books also showed certain driving to a Veterans' Administration hospital, the cost of which petitioner included in his claim for charitable deductions and which cost respondent has now agreed to be properly deductible. There was no indication of what portion of the driving was in connection with work in repairing or obtaining material for petitioner's rental properties or in collecting rents. Petitioner unsuccessfully attempted from these books to identify such amounts. We therefore sustain respondent's disallowance of traveling expenses in connection with petitioner's rental properties to the extent these claimed expenses exceed the amount allowed or conceded by respondent. Petitioner *259 testified in some detail at the trial about the portion of 1940 Warfield Drive that he used for personal reasons when he stayed overnight in Nashville. Petitioner listed the square footage of each room in this duplex, showing total square footage of 606.47 feet of which he claimed 383.95 feet, or 63.3 percent, was used in connection with his propert rentals. He determined the amount used in connection with his property rental by concluding that one-half of the kitchen was used to store materials connected with his rental, that no part of the bath was so used, and that the entire back bedroom and half of the front bedroom in which he slept, all of the living room, and half of the hallway were used for storage purposes. However, from his testimony it was apparent that he did walk through the living room as well as the hallway in going to the front bedroom where he slept. Section 280A(a) provides that except as otherwise provided in this section, a taxpayer who is an individual is entitled to no deduction otherwise allowable with respect to use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. Section 280A(d) provides that for the purposes *260 of this section, a taxpayer uses a dwelling unit during the taxable year as a residence "if he uses such unit (or portion thereof) for personal purposes for a number of days which exceeds the greater of--(A) 14 days, or (B) 10 percent of the number of days during such year for which such unit is rented at a fair rental." The evidence shows that 1940 Warfield Drive was not rented at any time during the taxable years here involved. The record also is clear that petitioner used a part of 1940 Warfield Drive in Nashville for personal purposes for well in excess of 14 days during each of the taxable years here involved. Clearly, 1940 Warfield Drive was a dwelling unit as defined in section 280A(f). Therefore, petitioner is not entitled to any deduction with respect to any use which may have been made of the property at 1940 Warfield Drive in connection with his property rentals unless he meets one of the exceptions of section 280A(c). Insofar as here pertinent, this section provides that subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is "exclusively used on a regular basis--(A) [as] the principal place of business *261 for any trade or business of the taxpayer, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business." Here, petitioner has made no claim and the evidence totally fails to show that any portion of 1940 Warfield Drive was used as the principal place for any trade or business of petitioner. Certainly there has been no showing that any clients or customers ever met petitioner at 1940 Warfield Drive, and 1940 Warfield Drive is not a separate structure, unattached to the dwelling unit which petitioner used for personal purposes. Petitioner has testified that he used a substantial portion of 1940 Warfield Drive for storage of items used to repair the units he rented, but has made no showing of any other type of use made of this property in connection with his rental properties. We therefore conclude that under the provisions of section 280A, petitioner is not entitled to deduct any portion of the expenses incurred in connection with 1940 Warfield *262 Drive as expenses of his rental operations. Petitioner cites and relies on Curphey v. Commissioner,73 T.C. 766 (1980). This case is totally distinguishable from the instant case. In the Curphey case, the parties stipulated that one room of the taxpayer's residence was used exclusively in connection with his rental operation and was the only place used in connection with that operation. The issue in that case was whether the taxpayer was engaged in a trade or business in connection with his rental operation and, if so, was the exception of section 280A(c) met. The taxpayer was a physician, and he had a separate place of business as a physician. It was therefore necessary to determine whether the taxpayer had a trade or business of renting property separate from his profession as a physician and, if he did, whether under section 280A it was necessary that the space in a residence be the principal place of business for the only trade or business of the taxpayer or merely for one trade or business in which he was engaged. We interpreted the section not to require that the trade or business carried on there be the only trade or business of the taxpayer.The *263 Curphey case is totally distinguishable from the instant case and therefore does not support petitioner's position that a part of the costs and depreciation on 1940 Warfield Drive should be allowed as a deduction in connection with his rental operations. Petitioner made no showing that depreciation other than that determined by respondent was properly allowable for his rental properties for the years here in issue. Respondent alleged in his amendment to answer that the depreciation should be allowed as determined in the prior Batson case, decided in 1982 for the years 1976 and 1977, on the basis of collateral estoppel. However, respondent was unable to show that there had been no change with respect to capital additions to the properties or other changes between the years 1976 and 1977 and the years involved in the instant case. He attempted to have petitioner testify that no capital additions had been made, but petitioner instead, though not with great precision, contended that there had been capital improvements made between the years 1976 and 1977 and the years here in issue. Furthermore, the conclusion in the prior case was merely that there was no evidence in the *264 record supporting any greater amount of depreciation deductions than those allowed by respondent. In fact, in a footnote The Court stated in that case that the taxpayer had presented a schedule which he had made up the night before but there was no evidence to support his figures, but that respondent had accepted some of the figures used by the taxpayer and corrected an arithmetical error in regard to one property. The Court then stated: "The Court accepts respondent's figures as partial concessions rather than disallowing all depreciation deductions on the rental properties." Batson v. Commissioner,supra, 43 T.C.M. at 560, n. 5. In this state of the record, [4] we conclude that respondent has failed to show collateral estoppel. Respondent, from questioning petitioner with respect to prior-year returns, attempted to establish a proper amount of depreciation less than he had allowed in the statutory notice. However, petitioner did not testify with respect to the properties in sufficient detail to establish what the proper amount of depreciation with respect to those properties should be. Primarily, petitioner kept insisting that he had capitalized rather *265 than deducted various amounts that must be added to the basis of the properties in computing depreciation. On the basis of this record, we sustain respondent's determination of depreciation as set forth in the notice of deficiency. We agree with respondent that from the findings of fact and opinion in the prior Batson case for the years 1976 and 1977, it is clear that the claimed $1,842 deduction for the payment to Mr. and Mrs. McMahan in each of the years here in issue arose from the same transaction under the same instruments as the payments of the same amount for each of the years 1976 and 1977. Therefore, petitioner is collaterally estopped by the prior Batson case to deny that these payments in 1978 and 1979 were option payments rather than deductible interest payments. Commissioner v. Sunnen, 333U.S. 591 (1948). During the years hear in issue petitioner was an employee of DuPont Company in Nashville. As an employee of DuPont Company, he was covered by a pension plan, although it was a noncontributory plan and, for this reason, petitioner *266 made no contribution to the plan. Section 219(a), as applicable to the years here in issue, allows a deduction for an amount paid to an IRA subject to limitations set forth in section 219(b). Section 219(b)(2)(A) provides that no deduction is allowable to an individual for any taxable year if for any part of such year he was an active participant in a plan described in section 401(a). Petitioner in the instant case was clearly an active participant in the DuPont Company pension plan and he has made no showing that the plan did not meet the requirements of section 401(a). Therefore, petitioner is not entitled to a deduction for a contribution to an IRA for either of the years here in issue. Johnson v. Commissioner,620 F.2d 153 (7th Cir. 1980), affg. a Memorandum Opinion of this Court; Guest v. Commissioner,72 T.C. 768 (1979). In fact, the same issue involving claimed deductions for a contribution to an IRA was involved in the prior Batson case, and in that case we held the claimed deductions not to be allowable for the years 1976 and 1977 because petitioner was an employee of E.I. DuPont deNemours and Company, covered by a pension plan described *267 in section 401(a). Petitioner has shown that he purchased stock in Management Television Systems and in Convenience Foods of America, Inc., during the year 1969. The record totally fails to show that these stocks became worthless during either the year 1978 or 1979. The record does show that petitioner still held these shares of stock during these years. From his testimony, petitioner apparently does not contend that the stocks became totally worthless in either the year 1978 or 1979, but rather contends that they were so reduced in value that he should be able to write off $1,500 of the total cost of the stocks of $4,600 in each of the years 1978 and 1979. It has long been settled that a loss cannot be taken until some specific event fixing the loss has occurred. Had petitioner sold the stocks at a loss in either of the years here in issue, he would have a fixed event that would entitle him to take a capital loss deduction. However, he did not sell the stocks in 1978 or 1979. Had the stocks become totally worthless during one of the years here in issue, under the provisions of section 165(g), the loss from the worthlessness of the stocks would be treated as a loss from the *268 sale or exchange of the stocks on the last day of the taxable year in which the stocks became worthless. However, petitioner has totally failed to establish that the stocks became totally worthless in either of the years here in issue. Petitioner here is attempting to write off as a loss the amount he considered the stocks he bought to have decreased in value. This decrease in value is not a properly deductible loss. See Scifo v. Commissioner,68 T.C. 714, 725-726 (1977); section 1.165-4(a), Income Tax Regs.
The record here shows that the $4,075.85 of interest which petitioner failed to report and respondent held was taxable to him was earned on accounts held by petitioner in a revocable trust as trustee for his daughter, Lynn M. Batson. The record shows that petitioner was the grantor of the trust. The "trust" agreement which petitioner signed as "grantor" and "trustee" in opening the account authorized him to "hold, manage, pledge, invest and reinvest" the funds in his sole discretion, and to revoke the trust in full or in part. This agreement also authorized him to withdraw the funds in full or in part and provided that any partial or complete withdrawal *269 of the funds by the trustee-grantor would be considered a revocation by the grantor of the trust to the extent of the withdrawal. Section 674(a) provides that a grantor shall be treated as the owner of any portion of a trust in respect of which the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition exercisable by the grantor without the approval or consent of an adverse party. The record here shows that the entire deposits on which the $4,075.85 interest was earned was subject to being withdrawn by petitioner and used for his own benefit. Clearly, therefore, petitioner was the owner for income tax purposes of the funds in these accounts and taxable on the interest earned on them. We therefore sustain respondent's determination that petitioner had unreported interest income in the year 1979 as determined in the notice of deficiency. Petitioner has totally failed to show that a part of the underpayment of tax in each of the years here in issue was not due to negligence or intentional disregard of rules and regulations. Not only has petitioner failed to show error in respondent's determination, the evidence affirmatively shows that *270 petitioner was negligent in not ascertaining his taxability on interest on savings accounts held in his name, in not keeping better records with respect to his rental properties, and in a number of other respects. On the basis of this record, we sustain respondent's determination of additions to tax under section 6653(a). Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue. ↩
2. Various issues with respect to expenses in connection with petitioner's rental properties for the year 1979 were raised in the petition, but the parties stipulated through an exhibit and orally in the record to all these items of expense except expenses connected with the business use of 1940 Warfield Drive, Nashville, Tennessee; automobile expenses; and depreciation. It is not completely clear whether petitioner is claiming a small amount of stationery and postage expenses in addition to the expenses agreed to by respondent, but no issue was raised in this respect in the petition and petitioner merely mentioned the items at the trial and did not prove the amount of such expenditures.↩
*. Adjustment based on determination in prior years. ** Adjustment made to correct computations shown on return.↩
3. At the trial, respondent stipulated with petitioner from a schedule a total of $1,690.24 of allowable rental expenses. This included automobile expenses of $185 based on 1,000 miles at 18-1/2 cents a mile. The schedule included a statement that this was the amount of mileage allowed in 1978. Also included in the agreed expenses were telephone expenses at 1940 Warfield Street of $60. On the record, respondent stipulated with petitioner an additional amount of $45 of insurance expense on these rental properties for the year 1979. Respondent also stipulated with petitioner that he was entitled to deduct a total amount of $17.13 with respect to filing fees, mailing costs and other miscellaneous items in connection with a petition filed in the year 1979 with this Court. He also stipulated that petitioner was entitled in 1979 to deduct $917.51 as charitable contributions. The charitable contributions are not in issue since petitioner did not attempt to prove the remaining amounts claimed on his 1979 return.↩
4. The record in the prior Batson case (T.C. Memo. 1982-78↩) was not put in evidence by respondent in the instant case.